Daniel J. Palay, SBN 159348
Brian D. Hefelfinger, SBN 253054
**PALAY HEFELFINGER, APC**
1746 S. Victoria Ave., Suite 230
Ventura, CA 93003
Telephone: (805) 628-8220
Facsimile:  (805) 765-8600
E-mail:      *djp@calemploymentcounsel.com*
             *bdh@calemploymentcounsel.com*
***Attorneys for Plaintiffs and the Putative Class***

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS NEWELL, an individual, for himself and those similarly situated; MIGUEL CALDERON, an individual, for himself and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENSIGN UNITED STATES DRILLING (CALIFORNIA) INC., a California corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 1:19 CV-01314-NONE-JLT <br><br> *Assigned to:  Magistrate Jennifer L. Thurston* <br><br> *[removed from Kern County Superior Court Case No. BCV-15-100367]* <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION; AND** <br><br> ***UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> <u>HEARING</u>: <br> Date:       January 13, 2021 <br> Time:       9:30 a.m. <br> Place:      Bakersfield Fed. Courthouse <br>               510 19th Street, Suite 200 <br>               Bakersfield, CA  93301 <br><br> *Action Removed:  September 20, 2019* |

**TO THE COURT, ALL INTERESTED PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 13, 2021, at 9:30 a.m., or as soon thereafter as the matter can be heard in in the above-entitled courtroom and courthouse located at 510 19th Street, Suite 200, Bakersfield, California, 93301, plaintiffs LOUIS NEWELL, and MIGUEL CALDERON,

("Plaintiffs"), together with defendant Ensign UNITED STATES DRILLING (CALIFORNIA) INC., ("Ensign" or "Defendant"), will move for preliminary approval of a class-wide settlement reached herein.  This motion is submitted by Plaintiffs and is *unopposed* by Defendant.

The within motion seeks, pursuant to Federal Rule of Civil Procedure 23, an Order:

(1)     Preliminarily approving the Joint Stipulation of Settlement between Plaintiffs and Defendant, which is filed herewith, on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

(2)     For purposes of settling this lawsuit, conditionally certifying the following Settlement Class:  All non-exempt employees of Ensign United States Drilling (California) Inc. who, at any time between June 22, 2011 and the present (the "Claims Period"), worked and stayed on oil platforms off of the California coast for periods of 24 consecutive hours or more any time during the Claims Period.

(3)     Approving the form and content of the proposed Notice of Class Action Settlement and related notice packet, and the proposed plan for mailing the Notice;

(4)     Appointing Daniel J. Palay and Brian D. Hefelfinger of Palay Hefelfinger, APC, and Michael A. Strauss of Strauss & Strauss, APC, to represent the Class as Class Counsel;

(5)     Appointing Louis Newell as Class Representative;

(6)     Appointing Miguel Calderon as Class Representative;

(7)     Scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and the enhancement payments to the Named Plaintiffs; and

(8)     Granting such other and further relief as may be appropriate.

Said Motion shall be based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities filed herewith, the Declaration of counsel Brian D. Hefelfinger, the Declarations of Louis Newell and Miguel Calderon, the Joint Stipulation re: Class Action Settlement and Release filed herein, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    This Motion is made pursuant to Local Rule 230, the Court's Order Unassigning District

2  Judge, and, further, pursuant to the notice of settlement and Court's September 30, 2020 order

3  directing the filing of this approval motion.

4

5  Dated:  December 14, 2020                          **PALAY HEFELFINGER**

6                                                     **A Professional Corporation**

7                                                     By: _____/s/_____

8                                                          Brian D. Hefelfinger
                                                          Attorneys for Plaintiffs and the Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.    NATURE OF RELIEF SOUGHT ................................................................................. 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

  A.   Procedural History of the Case. ........................................................................... 1

  B.   Factual Background of the Case. .......................................................................... 3

  C.   Disclosure and Discovery. .................................................................................... 5

  D.   Settlement. ............................................................................................................ 6

III.  NATURE OF PLAINTIFFS' OPERATIVE CLAIMS ............................................... 7

IV.   THE SETTLEMENT DOCUMENTS ......................................................................... 8

V.    SUMMARY OF THE SETTLEMENT ....................................................................... 8

  A.   Settlement Terms. ................................................................................................. 8

  B.   Settlement Value. ............................................................................................... 11

VI.   THE SETTLEMENT HEREIN MEETS THE REQUIRED STANDARDS FOR

PRELIMINARY APPROVAL. ............................................................................................. 12

  A.   The Settlement Resulted from Arm's-Length Negotiations. ............................. 13

  B.   The Settlement Has No Obvious Deficiencies. .................................................. 16

  C.   Conditional Certification of the Settlement Class is Appropriate. .................... 17

    1.   The Settlement Class is sufficiently numerous. .......................................... 17

    2.   Questions of law or fact are common to the class. ...................................... 18

**NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

3.      The Class Representatives' claims are typical of the Class. ............................... 18

4.      The Class Representatives and their Counsel will fairly and adequately protect the Class Members' interests.................................................................................................. 19

5.      A Class Action is superior to alternative methods of adjudicating the claims. ................. 19

6.      The Court should appoint the Named Plaintiffs as Class Representatives. ...................... 20

7.      The Court should appoint Plaintiffs' counsel as Class Counsel. ...................................... 20

VII.    THE NATURE AND METHOD OF CLASS NOTICE............................................................ 21

VIII.   CLAIMS ADMINISTRATION ................................................................................................ 22

IX.     ATTORNEYS' FEES AND COSTS ......................................................................................... 22

X.      ENHANCEMENT AWARD OR "SERVICE PAYMENT" FOR THE NAMED PLAINTIFFS………………………………………………………………………… …….23

XI.     PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL FAIRNESS HEARING.............................................................................................................. 23

XII.    CONCLUSION.......................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Winsor*,
    521 U.S. 591, 619-29 (1997) ............................................................................ 17

*Berry, et al. v. DCOR, LLC*,
    C.D. Cal. Case No. 2:15-cv02792 .................................................................... 21

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610, 622 (N.D. Cal. 1979) .......................................................... 15

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268, 1276 (9th Cir. 1992) ............................................................... 12

*Gardner v. GC Servs., LP*,
    2011 WL 5244378, at \*5 (S.D. Cal.2011) ....................................................... 20

*Gatreaux v. Pierce*,
    690 F.2d 616, 621 n.3 (7th Cir. 1982) ............................................................. 12

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96, 116 (2nd Cir. 2005) ..................................................................... 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1026 (9th Cir. 1998) ....................................................... 12, 13,17

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497, 508 (9th Cir. 1992) .................................................................... 18

*Joel A. v. Giuliani*,
    218 F.3d 132, 138 (2nd Cir. 2000) ................................................................... 12

*Kirkorian v. Borelli*,
    695 F. Supp. 446, 451 (N.D. Cal. 1988) .......................................................... 15

*Linkus Enters., Inc.*,
    259 F.R.D. 468, 473 (E.D.Cal.2009) ............................................................... 20

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234, 1242 (9th Cir. 1998) ............................................................... 16

*Mazur v. eBay Inc.*,
    257 F.R.D. 563, 667 (N.D. Cal. 2009) ............................................................. 17

*Mendiola v. CPS Security Services, Inc.*,
    60 Cal. 4th 833, 848-49 (2015) ........................................................................... 2

*Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*,
    221 F.R.D. 523, 525-26 (C.D. Cal.2004) ......................................................... 13

*Newton v. Parker Drilling*
    (9th Cir. 2018) ...................................................................................................... 2

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615, 625 (C.D. Cal. 1982) ............................................... 12, 13, 14, 16

*Parker Drilling Management Services, Ltd. v. Newton*,
    139 S.Ct. 1881 (2019) ...................................................................................... 2, 4

*Rodriguez v. Hayes*,
    591 F.3d 1105, 1124 (9th Cir. 2010) ............................................................... 18

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 13, 14

*Wells Fargo Home Mortg. Overtime Pay Litig.*,
    527 F.Supp.2d 1053, 1065–1068 (N.D.Cal.2007) .................................................... 20
*Williams v. Vukovich*,
    720 F.2d 909, 922-923 (6th Cir. 1983) .................................................... 14

**Statutes**

Fed. R. Civ. P. 23(a) .................................................... 17,21

**Other Authorities**

2 Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002) .............................. 14
2 Newberg on Class Actions §8.32.................................................... 22
*Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004) ...................... 13
*Manual For Complex Litigation*, Fourth, §30.42 .................................... 14
*Manual of Complex Litigation*, Fourth, § 21.632 (2004).............................. 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  NATURE OF RELIEF SOUGHT**

By this unopposed motion, Plaintiffs and the putative class, along with Defendant, seek preliminary approval of a substantial settlement of all claims between the parties.  Pursuant to years' long litigation of the key legal issues, extensive arm's-length negotiations between the parties and counsel, and pursuant to several private mediation sessions, the last of which was conducted on September 18, 2020, detailed terms and conditions of settlement have been bargained for and agreed-to; thus, the parties now seek this Court's approval of the settlement.

The settlement requires Defendant Ensign to pay a Maximum Settlement Amount of Two Million Four Hundred Thousand Dollars ($2,400,000.00) as a settlement amount for approximately 307 putative class members affected by the claims asserted in this action.  The settlement is in the best interest of the putative class members, both current and former employees of Ensign, and the facts and law warrant approval of the settlement under governing Ninth Circuit standards.

**II. INTRODUCTION AND SUMMARY OF ARGUMENT**

**A.  <u>Procedural History of the Case.</u>**

In the interest of brevity and given the nearly 6 year long history of this action, Plaintiff incorporates by this reference the procedural history outlined in the Notice of Removal of this action filed by Ensign.  This action was originally commenced and maintained from June 22, 2015, by plaintiffs Louis Newell and Miguel Calderon, starting with the filing of a Complaint in the Kern County Superior Court.  Declaration of Brian D. Hefelfinger, at ¶ 4 and Ex. 1.  Pursuant to the filing date, this class action case involves the period from June 22, 2011 to the present day (herein, the "Claims Period").  *See* Ex. 1 to the Hefelfinger Decl.  Defendant Ensign filed its Answer to the First Amended Complaint on or about September 23, 2015.  Hefelfinger Decl., ¶ 5 and Ex. 2.

During the pendency of the action, the parties stipulated to have the Kern County Superior Court adjudicate key legal issues in the case, including the applicability of California state wage and hour law to work performed on offshore platforms located in federal waters.  Mediation sessions also were conducted on three (3) separate occasions in the case.

Prior to the second mediation, Plaintiffs obtained a favorable summary adjudication ruling whereby the Kern County Superior Court adopted the (then-applicable) reasoning of the Ninth Circuit in *Newton v. Parker Drilling* (9th Cir. 2018) 881 F.3d 1078, and finding that California state law does apply to the OCS platforms where the Class members have worked, because state law claims asserted by Plaintiffs against Defendant are both "applicable" and "not inconsistent with" federal law.  This holding, together with existing California law expressed in cases such as *Mendiola v. CPS Security Services, Inc.,* 60 Cal. 4th 833, 848-49 (2015) (holding that California law does not allow exclusion of sleep time from hours worked), provided ample authority suggesting that Plaintiffs had an avenue to prevail on their primary overtime theory.

However, on or about June 10, 2019, the United States Supreme Court issued a decision in *Newton*, reversing the Ninth Circuit and holding that, where federal law "addresses" the relevant legal issue, state law is <u>not</u> adopted as surrogate federal law on the OCS.  *Parker Drilling Management Services, Ltd. v. Newton,* 139 S.Ct. 1881 (2019) ("*Newton*").  Accordingly, the Supreme Court concluded that California overtime rules are <u>not</u> adopted to protect workers on the OCS.

Following the *Newton* decision and the Supreme Court's direction that *federal* law (not state law) applies on the OCS where there is extant federal law addressing an issue, Plaintiffs were forced to abandon the *Mendiola* theory of overtime owed, and amended  the pleadings to include an additional overtime claim premised upon the Fair Labor Standards Act ("FLSA"), along with a California rest break violation claim, which would be applicable to shifts worked on the state waters platforms of Defendant.  Plaintiffs also limited the assertion of the other California law claims (minimum wage, overtime, etc.) to be related to the work performed within State waters, consistent with *Newton*. Thereafter, in approximately late September of 2019, Defendant removed the action to the Eastern District Court.  In February of 2020, the Plaintiffs filed a conditional certification motion under the FLSA, seeking to conditionally certify a collective of workers with the FLSA overtime claim. Defendant opposed the motion.

Under the changed legal landscape post-*Newton*, the parties attended the final mediation session on September 18, 2020, with Justice Stephen J. Kane presiding over the negotiations.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Hefelfinger Decl., ¶ 15. Following the conclusion of the mediation, the parties agreed to terms of a settlement of the action, which was memorialized in a long-form Stipulation of Settlement. Hefelfinger Decl., ¶ 16. On September 30, 2020, the Court noted the parties' settlement and ordered that this Motion for Preliminary Approval be filed on or before December 18, 2020.

### B. Factual Background of the Case.

For brevity, Plaintiff incorporates by reference Defendant's Notice of Removal and the attached state court pleadings. Defendant Ensign conducts drilling operations on offshore oil and gas platforms situated off of the California coast. *See* the Declarations of LOUIS NEWELL, and MIGUEL CALDERON (together, the "Named Plaintiff Decls.") at ¶ 4. The named Plaintiffs in this case worked for Ensign on federal offshore platforms, performing non-exempt work. *Id.* Plaintiffs' typical work schedule has consisted of a seven day "hitch" (the colloquial term for the work period spent offshore) which generally is (or was) seven consecutive days spent on the platform, followed by seven days off of work. *Id.*, at ¶ 5.

During a scheduled hitch, the Plaintiffs generally were scheduled to work a rotating 12-hour schedule. Plaintiffs allege that they, and the putative class, were scheduled for 12 hours "on duty," followed by 12 hours of "controlled standby." They allege this cycle repeats, for the seven (7) consecutive days spent on the platform. Named Plaintiff Decls., at ¶ 6-7. During a hitch, Plaintiffs further allege that they and the putative class were not able to leave the platform. Named Plaintiff Decls., at ¶ 7.

During the alleged controlled standby periods of the hitch, Plaintiffs and the putative class were allegedly required to be "on call" and available to respond to issues that arise on the platform. Named Plaintiff Decls., at ¶ 8.

In addition to being "on call" during the 12 hour controlled standby phases of a hitch, Plaintiffs allege they, and the putative class, also have been required to listen for and respond to calls and alarms during meal periods. Named Plaintiff Decls., at ¶ 9. If work calls or an alarm sounds, it is alleged that Plaintiffs and the putative class members were required to drop whatever they were doing (or eating) and respond to the work. Named Plaintiff Decls., at ¶ 9. Plaintiffs alleged further that they could not

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  leave the platform for any meals.  *Id.*, at ¶ 9-10.

2       Finally, Plaintiffs allege that during the relevant period, when class members resided aboard

3  the platforms affixed to the Outer Continental Shelf during their hitches / periods of consecutive shifts,

4  class members were provided lodging and common areas for personal use, as well as meals.  The

5  offshore lodging and meals were provided at no-cost to class members; however, the value of the

6  lodging and meals provided to the class members while offshore was not included in the regular rate

7  calculation for purposes of payment of overtime or doubletime wages to the class members.  *See* Third

8  Amended Complaint [ECF No. 15] at pp. 15-16.  Consequently, it is alleged that Plaintiffs and the

9  putative class were not correctly paid.

10      Based on these factual allegations, Plaintiffs allege that Ensign had the following common

11 policies and practices affecting the putative class: (1) requiring employees to remain on the oil

12 platforms for the duration of their hitch; (2) only paying employees for 12 or so hours of active work

13 time each day; (3) not paying employees for approximately 12 hours of "controlled standby" time each

14 day, whether at overtime, doubletime, or minimum wage rates; (4) not having employees clock out for

15 or receive duty free meal periods; (5) requiring employees to be ready to respond to alarms and calls

16 during "on duty" and "controlled standby" time; and (6) including meal and lodging benefits into the

17 regular rate of pay calculations.  Named Plaintiff Decls., ¶ 14; *see also,* Plaintiffs' Motion for FLSA

18 Certification, CM/ECF Doc. No. 19 at pp. 3-9 for more detailed factual explanation.

19      Ensign vigorously disputes all of the Plaintiffs' contentions, and maintains that several factual

20 and legal defenses are available to it.  *See, e.g.,* CM/ECF Doc. No. 18 [Ensign Answer].  Specifically,

21 Defendant argued that Plaintiffs, and the putative class, worked on offshore platforms affixed to the

22 seabed of the Outer Continental Shelf, and as such California wage-and-hour laws do not apply to their

23 employment.  This position was ultimately vindicated during the pendency of the litigation, by the

24 U.S. Supreme Court's ruling in *Parker Drilling Management Services, Ltd. v. Newton,* 139 S.Ct. 1881

25 (2019) ("*Newton*").

26      In all events, Defendant contends that it properly paid Plaintiffs and the putative class

27 compensation for all hours they worked while on the offshore platforms.  Moreover, Defendant's

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

position is that some of putative class members spent their off-duty time during their hitch on the offshore platforms at their own request or for their own personal preference. Defendant alleges the remaining putative class members, depending on the circumstances presented, were able to leave their platform during their hitch upon request.

Defendant further contends that Plaintiffs and the putative class were provided all required meal and rest periods. If a Plaintiff or putative class member ever did not take a compliant meal or rest period, Defendant contends that he did so at his own election or were paid a meal and/or rest period premium. Finally, Defendant believes it has fully complied with any and all FLSA regular rate requirements that might relate to the provision of meals and/or lodging to the offshore workers. Defendant further contends that class certification is not warranted.

**C. <u>Disclosure and Discovery.</u>**

From the outset of the litigation, the parties engaged in extensive disclosure and discovery, including both formal discovery exchanges, disclosures, and also informal sharing of documents and data incident to the multiple private mediation sessions conducted over the course of the litigation. Hefelfinger Decl., ¶ 6. From approximately July of 2015 through the conclusion of the mediation held on September 18, 2020 (*i.e.,* until the settlement), the parties engaged in extensive negotiations with respect to the various legal facets of the case, as well as settlement. *Id.* at ¶ 7. The parties also worked cooperatively regarding various stipulations pertaining to addressing the key legal issues driving the action.

After the third and final mediation session, conducted by Justice Stephen J. Kane (Ret.), a "mediator's proposal" was circulated to the parties and counsel, outlining the essential terms of a settlement for the parties to consider. Hefelfinger Decl., ¶ 9. The parties ultimately considered and accepted the proposal approximately one week later. In accepting the proposal, the parties further agreed that a more detailed, "long form" agreement would be prepared. Thereafter, a detailed Joint Stipulation re: Class Action Settlement and Release (hereafter, the "Stipulation of Settlement" or the "Settlement") was drafted and executed by the parties. Hefelfinger Decl., ¶ 10 and Ex. 3. At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arms'-length.

1    Hefelfinger Decl., ¶ 11.

2        Plaintiffs' counsel have conducted an investigation and extensive discovery during the

3    pendency of the action.  The investigation has included, among other things: (a) inspection and

4    analysis of the documents produced by Defendant, which included information pertaining to the

5    putative class members' work schedules, workplace  policies, meal period practices, and pay practices;

6    (b) detailed class member data relating to platform assignments, rates of pay, and data concerning all

7    shifts/hours worked; (c) interviews of numerous members of the putative class; (d) analysis of

8    potential class-wide damages; (e) analysis of the legal positions taken by Defendant and Plaintiffs; (f)

9    research of the applicable law with respect to the claims asserted in the Action and the potential

10   defenses thereto; (g) formal written discovery and disclosure, as well as deposition discovery of the

11   person-most-knowledgeable witnesses as well as the Plaintiff; and (h) informal discovery incident to

12   the private mediation.  Hefelfinger Decl., ¶ 12.

13       In conducting the disclosure and discovery outlined above, the Parties have engaged in

14   sufficient investigation to assess the relative merits of the claims of Plaintiffs and the other members

15   of the proposed Settlement Class, and of Defendant's affirmative defenses, defenses to certification,

16   and other legal defenses to the action.

17   **D.  <u>Settlement.</u>**

18       Having thoroughly reviewed and examined the evidence obtained over approximately 5 years

19   of litigating the case, the Plaintiffs and Defendant (and their counsel) participated in the final

20   mediation with all of the information necessary to reach an informed, reasoned and negotiated

21   settlement.  As of the time of the final mediation, the Parties had a detailed and nuanced understanding

22   of the factual and legal scenarios involved in this case.  In addition, the parties had the benefit of

23   obtaining a definitive ruling from the highest court in the land on the key legal issues in the action,

24   through the *Newton* decision that came down in 2019.

25       As such, the Parties were equipped with sufficient factual and legal information to accurately

26   assess the relative merits of their positions and to evaluate the worth of the claims of the Settlement

27   Class.  This understanding was at all times the foundation to the good-faith, arm's-length negotiations.

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Parties exchanged documents, data, and mediation briefs regarding their respective positions and arguments and the evidence in this Action. A negotiated settlement was achieved under the guidance of mediator Stephen J. Kane. Accordingly, the Parties believe that the terms of the Settlement reflect a fair and equitable compromise between them.

Plaintiffs and Plaintiffs' Counsel believe that the claims, allegations and contentions asserted in the Action have merit. However, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and delay of the lengthy proceedings necessary to prosecute the Action against Defendant through trial and appeals. Plaintiffs' also recognize that *Newton* fundamentally moved the needle in Defendant's liability exposure in the case, and also that appeals concerning the remaining, less-valuable claims, would nonetheless be a virtual certainty in the action. Furthermore, Plaintiffs' Counsel have taken into account the risks inherent in *any* litigation, and the additional risk of continued litigation in complex actions such as this. Plaintiffs' Counsel have also considered the potential difficulty in certifying and maintaining the Action as a class action.

Plaintiff's Counsel are also mindful of the inherent problems of proof under, and possible defenses to, the claims alleged in the Action. *See, e.g.,* arguments advanced in Defendant's Opp. to FLSA Certification [ECF No. 21 *et. seq.*], Def. 10-12-18 Opp. to Class Cert. [state court]. In light of the preceding potential risks, Plaintiffs' Counsel believe that the terms set forth in the Settlement confer substantial benefits upon Plaintiffs and each of the other members of the Settlement Class, and that an independent review of the Settlement Agreement by the Court in the approval process will confirm this conclusion. Based on their own independent investigation and evaluation, Plaintiffs' Counsel have determined that the terms set forth in the Settlement Agreement are in the best interests of Plaintiffs and the other members of the Settlement Class.

## III. NATURE OF PLAINTIFFS' OPERATIVE CLAIMS

The operative Complaint in this matter has nine (9) interrelated causes of action. The claims seek unpaid wages, premiums interest thereon, and derivative statutory penalties (as applicable) under the *California Labor Code*, as to "state waters" work shifts, as set forth in the Third Amended Complaint, which is incorporated herein by this reference. (ECF No. 15). The FLSA claim seeks the

wage "differential" based on the regular rate of pay calculation used by Ensign, under Plaintiffs' theory that the value of the meals and lodging provided to the works was required to be included in the regular rate calculation.

The state waters meal and rest premiums sought by the putative class, for state waters shifts, is based on the allegations that the putative class members must always be "on call" while offshore, and that they cannot leave the platforms or otherwise be guaranteed no interruptions or alarms, for meal or rest periods.

The cause of action for itemized wage statement penalties under *Labor Code* section 226, is derivative of the allegations supporting the wage claims.

The ninth cause of action herein is for civil penalties available under the Private Attorneys General Act of 2004, *California Labor Code* section 2699 *et seq.* (the "PAGA"). The PAGA claim seeks civil penalties against Ensign for violation of various sections of the *Labor Code* that are alleged to have occurred, in state waters only.

## IV. THE SETTLEMENT DOCUMENTS

Pursuant to extensive, back-and-forth negotiations between the parties and counsel, and pursuant to the experienced guidance of mediator Stephen J. Kane, the parties entered into a Mediator's Proposal outlining the basic settlement terms reached. Hefelfinger Decl., ¶ 9. The Parties' settlement was further, and more formally, memorialized in a detailed Stipulation of Settlement, executed by all parties. Hefelfinger Decl., ¶ 10, and Ex. 3 thereto. The key terms of the Settlement are discussed in the following section.

## V. SUMMARY OF THE SETTLEMENT

### A. <u>Settlement Terms.</u>

The settlement discussions between the parties have been non-collusive, adversarial, and at arm's-length. The investigation and discovery described above, the parties' ongoing case evaluations and exchanges of ideas, the full and complete briefing regarding various facets of the action that were mediated, and the Court's rulings here-to-date, have all combined to enable the two sides to fully and completely assess the merits of their respective positions.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The terms of the settlement are set forth in the Stipulation of Settlement, Exhibit 3 to the Hefelfinger Declaration filed herewith, and incorporated herein by this reference. The principal terms are summarized here:

(a) Defendant will pay a Maximum Settlement Amount of $2,400,000.00. This sum includes payments made to claimants (excluding employer-side tax obligations), PAGA penalties to the California Labor and Workforce Development Agency (the "LWDA Payment"), settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named Plaintiffs.

(b) The sum available for use for payments to claimants after the LWDA Payment, settlement administration costs, awards of attorneys' fees and costs, and incentive awards to the named Plaintiffs is designated in the Settlement Agreement as the Net Settlement Amount.

(c) Defendant does not object to an award of attorneys' fees to Class Counsel of thirty-five percent (35%) of the Maximum Settlement Amount, or Eight Hundred Forty Thousand U.S. Dollars ($840,000.00) and Class Counsel Costs not to exceed Fifteen Thousand U.S. Dollars ($15,000). The Parties' agreement in this regard acknowledges that the award of fees and costs shall be for all past and future fees and expenses in the case, and it is similar to fee awards in similar class action settlements.

(d) Named Plaintiffs NEWELL and CALDERON will seek incentive awards of $35,000 for NEWELL, and $25,000 for CALDERON. Defendant will not object to incentive awards to the named Plaintiffs up to these amounts.

(e) Each Class Member will be entitled to receive a portion of the amount of the Net Settlement Amount, as follows:

   i. The Claims Administrator will calculate the pro-rata amount of the Net Settlement Fund payable to each individual class member, based on his or her hours during the Claim Period (which shall be from the data supplied by Defendant to the Claims Administrator). This amount will be calculated by the Claims Administrator, in joint consultation with Class Counsel and defense counsel, as needed.

   ii. An "Individual Settlement Payment" for each Class Member will then be determined by his or her pro-rata share of the total hours applicable to the Settlement Class, applied to each allocation of the Net Settlement Fund herein, i.e., the $25,000 of the PAGA Payment included as part of the Net Settlement Amount and allocated for settlement of the PAGA Claims; the FLSA Payment for settlement of the FLSA Claims; and the balance of the Net Settlement Fund allocated for settlement of the remaining Class Claims

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

iii.   For settlement purposes, $200,000 of the Net Settlement Amount has been allocated toward resolution of the FLSA Claims.

iv.   If a member of the Settlement Class does not dispute the Eligible Hours figure tabulated for him/her, he/she shall receive the amounts as described above; a Settlement Class member need not take further action to participate in the Settlement.

v.   Members of the Settlement Class not opting out will receive a lump sum payment, in an amount determined by the Settlement Administrator in accordance with the Settlement Agreement.

vi.   The lump sum payment to each member of the Settlement Class not excluding him/ herself will be determined in accordance with the Settlement Agreement. All Settlement Class members who submit a valid and timely FLSA Claim Form, which includes a Consent to Join, and will be bound by the terms of the Settlement as to all Class Claims and receive full payment. If a Settlement Class member neither submits a timely and valid FLSA Claim Form nor Request to be Excluded, he/she will receive his/her pro rata share of the Net Settlement Payment allocated toward the California-based Class Claims and not the FLSA Claims, and he/she will only be bound by the terms of the Settlement as to the state-based Class Claims, including those under PAGA.

vii.   Only Settlement Class members who submit timely and valid FLSA Claim Forms will receive their pro rata portion of the FLSA Payment allocated for settlement of the FLSA Claims, from the $200,000 FLSA allocation.

(f)   The parties have selected CPT Group, Inc. ("CPT") as the Claims Administrator. CPT has provided an estimate of $15,000 for its administration expenses, and the parties have agreed to a "not to exceed" allocation of administration costs in the maximum amount of $15,000.

(g)   The parties have agreed on a Notice form, a FLSA Claim Form, Work Hours Dispute Form, and a Request for Exclusion form (attached to the Stipulation of Settlement as Exhibits A-D). These documents are collectively referred to as the "Notice Packet."

(h)   The Notice Packet will be mailed by First Class Mail. Class members will have sixty (60) calendar days from the date the Notice Packets are mailed to postmark their objections, and/or requests for exclusion, and/or FLSA Claim Form.

(i)   Ensign will fund the settlement in two phases; first, funds sufficient to pay the Settlement Class member payments, incentive awards, and administration costs, shall be deposited by approximately July 2, 2021; then, three months later, the remaining portion shall be funded which shall pay the litigation costs, attorneys' fees, and PAGA payment to the LWDA. (Settlement, at § XI.C.).

(j)    The Claims Administrator will perform skip-tracing on returned mail and re-mail Claim Forms to an updated address (if any) within five (5) calendar days of receiving notice that a Notice Packet was undeliverable. The Claims Administrator also may (but is not required to) utilize other methods – *e.g.*, private investigator – to attempt to locate each and every Class Member.

**B.    Settlement Value.**

The settlement reached by the parties represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant disagreements between the parties as to the facts, the law, and the application of both to the instant matters. The sum also reflects the reality of the U.S. Supreme Court's intervening holding in *Newton*. In all, the $2.4 million maximum settlement amount represents a compromise figure that accounts for the now-existing facts, law, and risks inherent to both sides in continuing the litigation forward.

As a prime example of the litigation risks facing the Plaintiffs and the Settlement Class, the U.S. Supreme Court's 2019 decision in *Parker Drilling Mgmt. Servs., Inc., v. Newton* was a significant litigation risk *actually coming to fruition* and affecting the Plaintiffs' case. The reversal of the 9th Circuit in *Newton* effectively vitiated the most valuable of the Plaintiffs' theories of recovery. Other factors, including the likelihood of obtaining and maintaining class certification with employees stationed at Defendant's worksites that are located on different federal and state offshore platforms, and the existence of certain arbitration and release agreements which Defendant would argue affected the putative class, were also considered.

Based on all the factors present, the settlement sum of $2,400,000.00 to be paid to the Settlement Class of roughly 307 offshore nonexempt employees represents a very fair and reasonable compromise. Based on the Maximum Settlement Amount and the estimated Settlement Class Members, if every class member submits a claim herein the *per capita* Individual Settlement Class Member Payment is $7,817.59 before deduction of taxes, administrative costs, litigation costs, attorneys' fees and the LWDA Payment. That value represents a reasonable outcome in light of the facts of the case and the state of the law.

The proposed Settlement provides substantial compensation to each Settlement Class Member (who does not opt-out) for the alleged "on call / control standby" wages (whether minimum, regular,

1  overtime, or double-time wages), the alleged missed meal and rest periods, the alleged regular rate

2  miscalculation wages owed, and derivative penalties and interest, all with reasonable discounting based on

3  risk.   Additionally, the settlement sum provides for a payment under the PAGA in the amount of

4  $75,000.00, to be paid to the California Labor Workforce Development Agency in satisfaction of the

5  alleged civil penalties.   In receiving compensation for the alleged wages owed, missed meal or rest

6  premiums, related *Labor Code* penalties, and additional sums to the State for the PAGA violations, the

7  settlement provides a significant recovery for the Class.  Hefelfinger Decl., ¶¶ 19-21.

8  **VI. THE SETTLEMENT HEREIN MEETS THE REQUIRED STANDARDS FOR**

9  **PRELIMINARY APPROVAL.**

10      *Federal Rules of Civil Procedure*, Rule 23(e) provides that any compromise of a class action

11  must receive court approval.  The court has broad discretion to grant such approval and should do so

12  where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon*

13  *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd

14  Cir. 2000).  In determining whether a proposed settlement should be approved, the Ninth Circuit has a

15  "strong judicial policy that favors settlement, particularly where complex class action litigation is

16  concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

17      Court approval involves a two-step process in which the Court first determines whether a

18  proposed class action settlement deserves preliminary approval and then, after notice is given to the

19  Class Members, whether final approval is warranted.  *Manual for Complex Litigation*, Fourth, §

20  21.632 (2004).  *See Hanlon*, 150 F.3d at 1019 ("The court ordinarily holds a preliminary hearing to

21  determine whether there is a likelihood it could approve the settlement before conducting a full

22  'fairness hearing.'").

23      At the preliminary approval stage, the Court need only "determine whether the proposed

24  settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th

25  Cir. 1982).  Ultimately, a class action should be approved if it "is fundamentally fair, adequate and

26  reasonable." *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice v. Civil Service Com'n of City and*

27  *County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("The court's intrusion on what is

28

otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").  There is a "strong initial presumption that the compromise is fair and reasonable."  *Hanlon*, 150 F.3d at 1019.

Although at this stage of preliminary approval, the Court is not expected to engage in the more-rigorous analysis that is required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> [T]he strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval.  *Nat'l Rural Telecommunications Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  District courts have wide discretion in assessing the weight and applicability of each factor.  *Id.*

A.  **The Settlement Resulted from Arm's-Length Negotiations.**

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties."  *Id.* at 965, *citing Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

13

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Id.* at 965, *quoting Officers for Justice*, 688 F.2d at 625.

The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the *Rodriguez* court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation*, Fourth, §30.42 (2002).

The proposed settlement here is the product of literally days, weeks and months of preparation, and of arm's-length negotiations between the parties facilitated by an experienced and well-regarded class action Mediator. The litigation also was conducted in a phased manner which incorporated United States Supreme Court precedent concerning contested issues in the case, from the matter of *Parker Drilling Management Services, Ltd. v. Newton,* 139 S. Ct. 1881 (2019) (*"Newton"*).

As detailed above and in the attached Declarations, Plaintiffs and their counsel conducted significant investigation of the facts and law during the prosecution of this action, including (a) inspection and analysis of the documents produced by Defendant, which included information pertaining to the putative class members' work schedules, workplace policies, meal period practices, and pay practices; (b) detailed class member data relating to platform assignments, hourly rates, dates of hiring / promotion / separation; (c) interviews of numerous members of the putative class; (d) analysis of potential class-wide damages; (e) analysis of the legal positions taken by Defendant and Plaintiffs; (f) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (g) formal written discovery and depositions; and (h) informal discovery incident to the private mediation.

In addition, summary adjudication practice was conducted, along with extensive research and

14

1   review of pleadings in similar litigations involving the legal issues in this case (*i.e.,* other wage/hour

2   matters involving offshore work, OCSLA and federal preemption issues) were considered as part of

3   the investigation and analysis done in this case relative to the settlement.  The *Newton* precedent was

4   also decided during the pendency of this case, and factored heavily in the outcome.  Plaintiffs' counsel

5   considered the strengths and weaknesses of their case, and of Ensign's defense.  Ensign's counsel

6   weighed the same issues, from a defense perspective.

7         Considering all of the available information, the settlement of $2,400,000.00 for the 307

8   Settlement Class Members represents a reasonable portion of the potential damages (plus interest

9   thereon) that the putative class may have recovered.  Hefelfinger Decl., ¶ 19.

10         The parties were able to negotiate a fair settlement, taking into account the costs and risks of

11   continued litigation.  The opinion of experienced counsel and that of a seasoned class-action mediator,

12   Justice Stephen J. Kane, all supporting the settlement, is entitled to considerable weight.   "A

13   presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in

14   arm's length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-*

15   *Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005).  *See Kirkorian v. Borelli*, 695

16   F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable

17   weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of

18   plaintiffs' counsel should be given a presumption of reasonableness).

19         Plaintiffs have also taken into account the uncertainty and risk of the outcome of further

20   litigation, class certification, and the difficulties and delays inherent in such proceedings.  As set forth

21   above, Plaintiffs are also aware of adverse rulings by this Court in similar wage/hour litigation, which

22   is a barometer of the risks of litigation in the instant action.

23         Further, the burdens of proof necessary to establish the amount of damages for the putative

24   class members, given that so-called "trials by formula" are discouraged, not to mention the strong

25   likelihood that Defendant would likely have opposed class certification and also moved for summary

26   judgment of certain claims, all are factors which affected the settlement value and the reasonableness

27   of that figure.

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1    Based on the foregoing, Plaintiffs and their counsel have determined that the settlement set

2    forth in the Stipulation for Settlement is a fair, adequate and reasonable settlement, and is in the

3    best interests of Plaintiffs and the proposed Settlement Class. Hefelfinger Decl., ¶¶ 19-24, 32.

4    Defendant also has expended substantial amounts of time, energy and resources in connection

5    with the litigation, and unless this settlement is approved, will continue to have to do so. Defendant

6    has, therefore, agreed to settle in the manner and upon the terms set forth in the Stipulation for

7    Settlement, to put to rest the claims as set forth in the action.

8    **B.  The Settlement Has No Obvious Deficiencies.**

9    The proposed settlement has no obvious deficiencies. Under the terms of the settlement,

10   Defendant will pay $2,400,000.00 in settlement of the class claims asserted in the action. The

11   settlement provides no preferential treatment for Plaintiffs or other Class Members. Plaintiffs will

12   receive distributions from the settlement proceeds calculated in the same manner as the distributions to

13   all other Class Members.

14   There is no standard or benchmark for determining whether any given settlement is fair.

15   "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing,

16   gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). In

17   making its determination, the Court should weigh the benefits that the settlement will realize for the

18   putative class against the uncertainty of litigation and the possibility that the class members would

19   obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,

20   1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful

21   and expensive litigation that induce consensual settlements.")

22   Throughout this litigation, Plaintiffs have argued that Defendant is liable for unpaid wages,

23   meal premiums, reimbursements, and related penalties and interest, all because of alleged workplace

24   policies and practices in place on Ensign's offshore platforms. Defendant, on the other hand, has

25   steadfastly maintained that Plaintiffs and the class were properly treated in this regard. Defendant has

26   also maintained that Plaintiffs' state law claims would not extend to the Outer Continental Shelf.

27   Moreover, Defendant has maintained that Plaintiffs would be unable to represent other Ensign

28

16

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  employees situated on different platforms and in different positions.

2       This settlement represents a substantial recovery for the putative class, and a well-crafted

3  compromise of the divergent positions of the parties in relation to these issues.  The settlement was

4  reached at mediation, after considerable investigation, briefing and negotiation.  Each side evaluated

5  the strengths and weaknesses of their case and independently came to the conclusion that this

6  settlement represents a responsible means of addressing the claims of Plaintiffs, and the defenses of

7  Defendant.

8       **C.  Conditional Certification of the Settlement Class is Appropriate.**

9       As part of the preliminary approval of a settlement, the Court must determine that the proposed

10 Settlement Class is a proper class for settlement purposes.  *See generally Fed. R. Civ. P.* 23(e); Manual

11 for Complex Litigation (4th ed. 2004) §21.632.  Courts routinely and properly certify classes for

12 settlement purposes, and the proposed certification of the Settlement Class in this case is entirely

13 consistent with the applicable authorities.  *Amchem Prods. Inc. v. Winsor*, 521 U.S. 591, 619-29

14 (1997).  Certification of a class under Rule 23 requires numerosity, commonality, typicality, and

15 adequacy.  Fed. R. Civ. P. 23(a).  All four elements are satisfied here.

16      **1.  The Settlement Class is sufficiently numerous.**

17      The numerosity requirement mandates that the class be "so numerous that joinder of all

18 members is impracticable." *Fed. R. Civ. P.* 23(a)(1).  In addition, the class should be "ascertainable,"

19 *Mazur v. eBay Inc.*, 257 F.R.D. 563, 667 (N.D. Cal. 2009), meaning that the class definition must be

20 "definite enough so that it is administratively feasible for the court to ascertain whether an individual

21 is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  The parties

22 have jointly identified through the employment records the identities of the Settlement Class members.

23 Here, based on its records, Defendant estimates that 307 individuals in the Settlement Class were

24 employed by Defendant during the Class Period.  (Settlement, ¶ XVIII.(K)).  This is facially sufficient

25 to satisfy Rule 23's numerosity and ascertainability requirements.  *See Hanlon v. Chrysler Corp.*, 150

26 F.3d 1011, 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if 'the class is so large

27 that joinder of all members is impracticable.'").

28

1       **2.   Questions of law or fact are common to the class.**

2       The commonality requirement requires that there be "questions of law or fact common to the

3   class." *Fed. R. Civ. P.* 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and

4   law which are common to the class." *Hanlon*, 150 F.3d at 1019.  The commonality requirement

5   should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common

6   to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient,

7   as is a common core of salient facts coupled with disparate legal remedies within the class."  Id.

8       Here, all Settlement Class members were subject to the same offshore wage and hour policies

9   and practices of Defendant, which formed the basis for the instant Action.  Indeed, by the parties;

10  stipulation to certification in October 2016, and subsequent cross-motions for summary adjudication

11  on the key legal issue in the case affecting the Settlement Class members on a class-wide basis, it is

12  beyond dispute that Ensign's practices and policies have been shown to be common to the Class. As

13  such, Plaintiffs meet the commonality requirement.

14      **3.   The Class Representatives' claims are typical of the Class.**

15      The next requirement of Rule 23(a) is "typicality," which focuses on the relationship of facts

16  and issues between the class and its representatives.  "[R]epresentative claims are 'typical' if they are

17  reasonably co-extensive with those of absent class members; they need not be substantially identical."

18  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similarly

19  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

20  other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts*

21  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).   "Like the commonality requirement, the typicality

22  requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-

23  extensive with those of absent class members; they need not be substantially identical." *Rodriguez v.*

24  *Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting Hanlon, 150 F.3d at 1020).

25      Here, the Named Plaintiffs represent and are typical of all non-exempt employees of Ensign

26  United States Drilling (California) Inc. who, at any time between June 22, 2011 and the present (the

27  "Claims Period"), worked and stayed on oil platforms off of the California coast for periods of 24

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

consecutive hours or more any time during the Claims Period. (Settlement, § I. Y.). Accordingly, Plaintiffs' claims are typical of those of the Class Members.

**4. The Class Representatives and their Counsel will fairly and adequately protect the Class Members' interests.**

Rule 23(a)(4) requires that the Class Representative(s) must "fairly and adequately protect the interests of the class." Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class.

Here, Plaintiffs NEWELL and CALDERON will fairly and adequately protect the interests of the Class Members. Indeed, these Plaintiffs have done so for over 5 years of litigation. Plaintiffs also have no conflicts of interest with the other Class Members, and they do not seek any different relief than that they seeks on behalf of Class Members. Additionally, Plaintiffs have been totally committed to the action, and have devoted extensive time and resources to assisting counsel with the action, providing documents, reviewing pleadings and attending multiple sessions for mediation. Plaintiffs also assisted with preparation for the sessions in the case, and provided other integral assistance to the litigation. (*See generally,* Newell and Calderon Decls. filed herewith). Plaintiffs have no interests that are antagonistic to other Class members and, in fact, they share a strong and identical interest in protecting Class Members and their interests. (*See, Id.*).

Further, Class Counsel herein are well-qualified and, as detailed in the supporting declarations filed with this motion, have substantial experience litigating and settling complex employment law actions involving the same issues raised by this case, including prior class action experience with these same legal issues. (Hefelfinger Decl., ¶¶ 27-30). Accordingly, the adequacy requirement is satisfied.

**5. A Class Action is superior to alternative methods of adjudicating the claims.**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed.R.Civ.P.* 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–1023.

1  As discussed, the litigant's decision to stipulate to certification and bring cross-motions for

2  summary adjudication of the OCSLA legal issues in this matter, as applied uniformly to all Settlement

3  Class Members, is clear evidence that the common legal and factual issues in this matter

4  "predominate" over individual issues.  Claims based on commonly-applied wage/hour policy are

5  generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3).  *See, e.g., Wright v.*

6  *Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D.Cal.2009) (finding predominance, despite minor factual

7  difference between individual class members, where the case involved alleged policies that affected

8  class members' compensation, expense reimbursement, and other workplace practices); *In re Wells*

9  *Fargo Home Mortg. Overtime Pay Litig*., 527 F.Supp.2d 1053, 1065–1068 (N.D.Cal.2007) (finding

10  predominance where, as a general matter, the defendant's policy and practice regarding compensation

11  and exemption was uniform for all putative class members); *Gardner v. GC Servs., LP*, 2011 WL

12  5244378, at *5 (S.D. Cal.2011) (finding that Rule 23(b)(3) was satisfied where "the claims stem from

13  GC Services' alleged uniform policy of requiring account representative to perform certain pre-shift,

14  post-shift, and lunch time tasks without compensation...").

15  In this matter, the Settlement Class Members worked in similar offshore locations, were

16  affected by common policies, and maintained common claims based upon the Defendants' uniform

17  offshore worker policies which affected their wages and hours.  Accordingly, conditional class

18  certification under Rule 23(a) and Rule 23(b)(3) is warranted.

19  **6.  The Court should appoint the Named Plaintiffs as Class Representatives.**

20  Because Plaintiffs NEWELL and CALDERON have vigorously protected , and will fairly and

21  adequately protect the interests of the Class, and because they have no conflicts of interest with the

22  other Class Members, as previously discussed in subparagraph 4, the Court should appoint both of

23  them as Class Representatives for purposes of the Settlement.

24  **7.  The Court should appoint Plaintiffs' counsel as Class Counsel.**

25  "An order certifying a class action . . . must appoint class counsel under Rule 23(g)."  Rule

26  23(c)(1)(B).  Courts must consider counsels' work in identifying or investigating claims; counsel's

27  experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the

28

1  resources counsel will commit to representing the class.  *Fed. R. Civ. P.* 23(g)(1)(A).

2       Here, the work that Plaintiffs' counsel performed in this matter, as well as in prior class

3  litigation involving very similar legal issues (i.e. offshore workers, OCSLA issues) – *e.g.* in *Berry, et*

4  *al. v. DCOR, LLC,* C.D. Cal. Case No. 2:15-cv02792 – a provides a substantial basis for the Court's

5  finding that they satisfy Rule 23(g)'s criteria. For instance, Class Counsel identified and investigated

6  the Plaintiffs' claims, interviewed dozens of class members, pursued litigation, motion and appellate

7  work over the course of five years in this matter, attended three mediations, among many other tasks in

8  the case.  In addition, Class Counsel obtained substantial relief for some of the same Settlement Class

9  Members in this matter, through prior litigation involving the same wage/hour issues, in the *Berry v.*

10  *DCOR* offshore action.  (Hefelfinger Decl., ¶ 29).  In other words, Class Counsel has past experience

11  litigating wage/hour claims, on multiple fronts, and resolving and/or trying them, including actions

12  involving very similar facts and legal issues as in this case.

13       In this case, Plaintiffs' counsel worked on identifying the Class, investigating Defendants'

14  policies and practices, and researching the legal issues both substantive and procedural.  Counsel have

15  vast experience handling wage and hour cases, including matters against these Defendants, know the

16  applicable law, and are committed to representing the Class.  (Hefelfinger Decl., ¶ 29-30).  This

17  applies to all of the firms with attorneys working on behalf of the Plaintiffs in this matter.  The state

18  court previously certified the class in this matter for summary adjudication purposes, and appointed

19  Palay Hefelfinger APC and Strauss & Strauss APC as Class Counsel herein.

20       Accordingly, and for purposes of the settlement herein, this Court should without hesitancy

21  similarly appoint Daniel J. Palay and Brian D. Hefelfinger of Palay Hefelfinger, APC, and Michael A.

22  Strauss of Strauss & Strauss APC, to represent the class as Class Counsel for purposes of the

23  Settlement.

24  **VII.    THE NATURE AND METHOD OF CLASS NOTICE**

25       "For any class certified under Rule 23(b)(3), the court must direct to Class Members the best

26  notice practicable under the circumstances, including individual notice     to all members who can be

27  identified through reasonable effort."  *Fed. R. Civ. P.* Rule 23(c)(2)(B).  "The court must direct notice

28

1  in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary

2  dismissal or compromise." *Fed. R. Civ. P.* Rule 23(e)(B). Here, the parties have agreed upon a notice

3  packet that will be mailed to all last known addresses in the Defendant's records. The Class

4  Administrator also will check the addresses against the National Change of Address database, in an

5  effort to track down as many Class Members as possible. Thus, through these efforts, the direct mail

6  notice is the most efficient and effective method for notifying class members.

7      As for the content of the notice, Rule 23(c)(2) requires that the notice inform prospective class

8  members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,

9  issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member

10 so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

11 time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class

12 members. Rule 23(e) generally requires the same concepts. "Notice is satisfactory if it generally

13 describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

14 investigate and to come forward and be heard." 2 Newberg on Class Actions § 8.32 (4th Ed. & Supp.

15 2002) at 8-103. The proposed Notice, attached to the Stipulation of Settlement (Ex. "A" thereto),

16 meets all of these requirements.

17 **VIII.  CLAIMS ADMINISTRATION**

18     The parties have agreed to the appointment of CPT Group, Inc. as the Claims/Class

19 Administrator. CPT has acted as claims administrator in numerous wage and hour class actions

20 prosecuted by Class Counsel. Hefelfinger Decl., ¶ 25. CPT has provided an estimate that its expenses

21 will be less than $15,000. *Id.* This estimate includes the efforts to attempt to locate each and every

22 Class Member, settlement calculations, mailings, call center support, tax reporting forms, and all other

23 necessary administrative tasks incident to facilitating the Settlement.

24 **IX. ATTORNEYS' FEES AND COSTS**

25     The Settlement Agreement contemplates that Class Counsel will apply to the Court for an

26 award to be paid from the Maximum Settlement Amount. Class Counsel will seek fees of thirty-five

27 percent (35%) of the Maximum Settlement Amount, or Eight Hundred Forty Thousand U.S. Dollars

28

($840,000.00), and costs/expenses not to exceed Fifteen Thousand U.S. Dollars ($15,000). The request for this award is consistent with the risk and work performed in the case, and the relevant legal authority, and it will be fully disclosed in the proposed Notice to the Settlement Class Members.

Class Counsel will file their motion for an award of fees and costs in a timely manner such that putative class members have the appropriate Eastern District "motion notice" period to review the same prior to the expiration of the time to object or opt-out of this settlement.

## X. ENHANCEMENT AWARD OR "SERVICE PAYMENT" FOR THE NAMED PLAINTIFFS

The Settlement Stipulation contemplates that the named Plaintiffs will apply to the Court for an incentive/service award to be paid from the Maximum Settlement Amount. The named Plaintiffs will seek incentive awards, as follows: to Plaintiff NEWELL – an award of $35,000, and to Plaintiff CALDERON – an award of $25,000. See the Named Plaintiff Declarations, filed herewith. Defendant has agreed not to object to the Plaintiffs' request for enhancements. The request for these awards is disclosed in the proposed Notice. Plaintiffs will file the motion for approval of the requested incentive awards in a timely manner such that putative class members have the appropriate Eastern District "motion notice" period to review the same prior to the expiration of the time to object or opt-out of this settlement.

## XI. PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL FAIRNESS HEARING

Subject to the Court's availability, Plaintiffs propose that the Court set a final fairness hearing (and hearing on Class Counsel's motion for attorney's fees and costs, and the Class Representatives' motion for service enhancements) for mid April of 2021. Assuming a preliminary approval order issues in January of 2021, this will allow adequate time for the claims administration process to be completed, and the parties can report back and file appropriate motion paperwork for an April 2021 final approval hearing.

## XII. CONCLUSION

The parties have reached this settlement following extensive litigation, ongoing case

1   discussions and arm's-length negotiations.  Plaintiffs therefore respectfully request that the Court grant

2   preliminary approval of the proposed settlement, and enter the proposed Preliminary Approval Order

3   submitted herewith, and for such additional relief as this Court should deem proper.

4

5                                             Respectfully submitted,

6

7   Dated:   December 14, 2020                          **PALAY HEFELFINGER, APC**

8                                                       **A Professional Corporation**

9                                             By:   ___/s/_____

10                                                      Brian D. Hefelfinger
                                                        Attorneys for Plaintiffs and the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**