UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS NEWELL, an individual, for himself and those similarly situated; MIGUEL CALDERON, an individual, for himself and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENSIGN UNITED STATES DRILLING (CALIFORNIA) INC., a California corporation,<br><br>Defendant. | No. 1:19-cv-01314-NONE-JLT<br><br>ORDER DIRECTING THE FILING OF SUPPLEMENTAL BRIEFING REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. No. 30) |

On June 22, 2015, plaintiffs commenced a class action lawsuit against defendant in Kern County Superior Court, arising out of the requirement that employees remain on offshore oil platforms owned by defendant for multi-day shifts while receiving pay for only part of each day. (Doc. No. 1-1.) Following the expiration of the required statutory notice period set forth in California Labor Code § 2698 *et seq.*, plaintiffs filed a first amended complaint on August 3, 2015, alleging claims for minimum wage violations, unfair competition, failure to timely pay final wages, failure to provide lawful meal periods, failure to pay overtime and doubletime premium wages, and pay stub violations, as well as an additional cause of action pursuant to the California Private Attorneys General Act ("PAGA").  (Doc. No. 1-2.)

On February 5, 2018, the Ninth Circuit issued a decision in *Newton v. Parker Drilling Management Services, Ltd.*, holding that California labor law applies to the Outer Continental Shelf ("OCS") platforms where proposed class members have worked, that state law is not inconsistent with federal law and thus California state wage and hour laws are adopted as surrogate federal law on the offshore platforms.  881 F.3d 1078 (9th Cir. 2018), *vacated and remanded by Parker Drilling Mgmt. Servs., Ltd. v. Newton*, __U.S__, 139 S. Ct. 1881 (2019). The Ninth Circuit's holding and existing California law suggested that plaintiffs had a potential avenue to prevail on their primary overtime theory.  (Doc. No. 30 at 9.)  However, on June 10, 2019, the United States Supreme Court reversed the Ninth Circuit's decision in *Newton*, holding that where federal law addresses the relevant legal issue, state law is not adopted as surrogate federal law on the OCS.  139 S. Ct. at 1881.  In light of the Supreme Court's reversal, the parties stipulated that plaintiffs would amend their complaint to assert an overtime claim under the Fair Labor Standards Act ("FLSA") and a rest break claim under California law, among other clarifications of the pleadings, and plaintiffs filed their second amended complaint on August 22, 2019.  (Doc. Nos. 1-6, 1-7.)  Thereafter, on September 19, 2019, defendant removed the action to this federal court.  (Doc. No. 1).  The parties again stipulated to plaintiffs' filing of the operative third amended complaint, which was filed on January 29, 2020.  (Doc. Nos. 13–15.)

On February 28, 2020, plaintiffs filed a motion for conditional certification of a collective of workers and facilitated notice under the FLSA, which defendant opposed.  (Doc. Nos. 19, 21.) The assigned magistrate judge issued findings and recommendations on April 29, 2020, recommending that plaintiffs' motion be granted.  (Doc. No. 24.)  Defendant filed objections to those findings and recommendations, and plaintiffs filed a response.  (Doc. Nos. 25, 26.)  The findings and recommendations remained pending when the parties moved into a settlement posture as explained below.

Over the course of this litigation, the parties participated in three mediation sessions, with the final one taking place before Justice Stephen J. Kane (Ret.) on September 18, 2020.  (Doc. No. 30 at 9.)  Following the conclusion of the mediation, the parties agreed to settlement terms and, on September 29, 2020, the parties notified the court of their settlement.  (Doc. No. 28; *see*

Ex. 3, Hefelfinger Decl., Doc. No. 30-1 at 56–87.) The assigned magistrate judge ordered the parties to file a motion for preliminary approval of the class and representative settlement by December 18, 2020, and vacated all pending dates, conferences, and hearings. (Doc. No. 29.)

On December 14, 2020, plaintiffs filed the present unopposed motion for preliminary approval of the class action settlement. (Doc. Nos. 30, 32.) As part of that motion, plaintiffs have also moved for conditional certification of the settlement class but have not specifically revisited the issue of conditional certification of the FLSA collective addressed by the magistrate judge in the April 29, 2020 findings and recommendations. This court has reviewed the pending motion and, for the reasons set forth below, the court will direct the parties to submit supplemental briefing adequately addressing several issues raised by the pending motion.

## ANALYSIS

**A.    Excessive Attorneys' Fees**

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).

In the Ninth Circuit, courts typically utilize 25% of the common fund as the "benchmark" for a reasonable fee award, with adjustments provided if there is adequate explanation in the record for any special circumstances justifying departure. *See In re Bluetooth*, 654 F.3d at 942, 947 (noting that a sign of collusion may exist "when counsel receive a disproportionate distribution of the settlement"). The usual range for common fund attorneys' fees is between 20% to 30%. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Here, plaintiffs' counsel requests fees representing 35% ($840,000) of the maximum settlement amount, and costs and expenses not exceeding $15,000. (Doc. No. 30 at 29–30.) However, plaintiffs' motion does not sufficiently explain why this court should depart from the 25% benchmark. Plaintiffs merely represent that the request "is consistent with the risk and work

performed in the case, and the relevant legal authority, and it will be fully disclosed in the proposed Notice to the Settlement Class Members." (*Id.* at 30.) The type of work described in the declaration of Brian Hefelfinger only reflects the tasks commonly associated with litigation and thus does not address why counsel's above-benchmark fee request is justified. (*See* Hefelfinger Decl., Doc. No. 30-1 at 1–7.) While the parties are not necessarily required to provide as detailed of an explanation at the preliminary approval stage as will be required at the final approval, prior to preliminary approval, the court will require at least a general showing as to why plaintiffs' counsel's representation in this matter warrants an above-benchmark fee award. Accordingly, plaintiffs will be directed to file supplemental briefing justifying the above-benchmark attorneys' fees request at this preliminary approval stage.

**B.      Excessive Enhancement Awards**

While incentive or enhancement awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (citation omitted).

Here, plaintiff Newell seeks an enhancement award of $35,000, which is approximately 1.5% of the overall settlement amount. (Doc. No. 30 at 30.) He estimates that he has spent in excess of 275 hours over five years of litigation beginning in June 2015. (Newell Decl., Doc. No. 30-2 ¶ 25.) In support of his requested $35,000 enhancement award, plaintiff Newell declares that he: (1) spoke with or emailed class counsel about the litigation, on average, at least once every few weeks or more frequently depending on litigation or negotiation events, to obtain

updates and to provide insight; (2) traveled to Bakersfield, California, for two mediation sessions and incurred personal travel expenses; (3) actively participated in all three mediation sessions and in discussions about the claims and defenses; and (4) reviewed evidence, transcripts, pleadings, motions, other briefs, declarations, deposition outlines, discovery requests and responses, and the stipulation of settlement. (*Id.* ¶¶ 20–26.) Furthermore, plaintiff Newell states that he risked his personal assets "because [his] fee agreement with Class Counsel obligates [him] to pay litigation costs and there was always the risk that [he] would have to pay Defendant's costs if [they] lost the case." (*Id.* ¶ 29.)

Plaintiff Calderon seeks an enhancement award of $25,000, which is approximately 1.0% of the overall settlement award. (Doc. No. 30 at 30.) He estimates that he has spent in excess of 150 hours over two years of litigation beginning in early 2019. (Calderon Decl., Doc. No. 30-3 ¶ 25.) In support of his requested $25,000 enhancement award, plaintiff Calderon declares that he: (1) spoke with or emailed class counsel about the litigation, on average, at least once every few weeks or more frequently depending on litigation or negotiation events, to get updates and to provide insight; (2) actively participated in the September 2020 mediation session, which took place virtually on Zoom, and in discussions about the claims and defenses; and (3) reviewed evidence, transcripts, pleadings, motions, other briefs, declarations, deposition outlines, discovery requests and responses, and the stipulation of settlement. (*Id.* ¶¶ 20–26.) Plaintiff Calderon also states that he risked his personal assets "because [his] fee agreement with Class Counsel obligates [him] to pay litigation costs and there was always the risk that [he] would have to pay Defendant's costs if [they] lost the case." (*Id.* ¶ 29.) Finally, plaintiff Calderon states that he was "laid off by [defendant] *during the pendency of the case*," and believes that his "layoff was, at least in part, due to mention of [his] name as a named plaintiff in the action starting in 2019." (*Id.* ¶ 27 (emphasis in original).)

Ultimately, both named plaintiffs declare that they fully cooperated in litigating the case, risked the loss of future employment by filing class actions against their employer, and took on significant financial risk due to the possibility they could ultimately lose the case and be forced to pay for defendant's attorneys' fees or other costs. (*See* Doc. Nos. 30-2, 30-3.) According to the

calculations provided by class counsel, however, "if every class member submits a claim herein the per capita Individual Settlement Class Member Payment is <u>$7,817.59</u> before deduction of taxes, administrative costs, litigation costs, attorneys' fees and the LWDA Payment." (Doc. No. 30 at 18 (emphasis in original).)  Thus, enhancement awards of $35,000 and $25,000 are disproportionately higher than that of the prospective award to be made to the average class member, although individual awards will vary based on class members' number of hours worked.[1]

The undersigned has preliminarily approved $15,000 and $10,000 incentive payments in the past, *see Gonzales v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *12–13 (E.D. Cal. Mar. 26, 2020), but common incentive awards are often lower. *See Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2019) (and cases cited therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class representative).  Plaintiffs' combined enhancement awards consist of 2.5% of the total settlement amount of $2,400,000, which is also unusually high.  *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013) (finding proposed incentive payment of $7,500 was excessive where it comprised 1.8% of total settlement amount ($400,000) and the average class member's share of the settlement was $65.79); *Ko v. Natura Pet Prods., Inc.*, Civ. No. 09-2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000).  Accordingly, plaintiffs will be directed to file supplemental briefing justifying the above-benchmark enhancement award requests at this preliminary approval stage, keeping in mind the court's particularized concern that the enhancement awards may be excessive relative to the amount other class/collective members are likely to receive.

---

[1] As discussed below, the estimated *per capita* Individual Settlement Class Member payment does not account for the various deductions, meaning that the actual payment to each class member will be lower.

6

**C.     Rule 23(b)(3) Requirements**

In addition to the requirements of Rule 23(a), Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

While the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Amchem*, 521 U.S. at 624–25; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof that the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-cv-0616-AWI-SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Plaintiffs' motion refers to Rule 23(b)(3)'s predominance and superiority requirements but does not sufficiently explain how these requirements are met here. (*See* Doc. No. 30 at 26–27.) Regarding predominance, plaintiffs only state that "the litigant's decision to stipulate to certification and bring cross-motions for summary adjudication of the OCSLA legal issues in this

7

matter, as applied uniformly to all Settlement Class Members, is clear evidence that the common legal and factual issues in this matter 'predominate' over individual issues." (*Id.* at 27 (further stating that "[c]laims based on commonly-applied wage/hour policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3)" (citations omitted).)  This logic is not persuasive, particularly in light of the fact that elsewhere in their motion, plaintiffs concede that "[d]efendant contends that class certification is not warranted." (*Id.* at 5.)  Plaintiffs further assert in a conclusory fashion that "the Settlement Class Members worked in similar offshore locations, were affected by common policies, and maintained common claims based upon the Defendants' uniform offshore worker policies which affected their wages and hours." (*Id.*)  Even if the court were to accept this conclusory assertion, it goes only to commonality, not predominance or superiority.  Therefore, plaintiffs are directed to file supplemental briefing addressing in more detail whether Rule 23(b)(3)'s requirements are satisfied.

**D.      FLSA Settlement**

The FLSA permits employees to file civil actions against employers who abridge the FLSA's guarantees.  29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract.").  Employees may bring collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).

Plaintiffs seeking conditional certification of a collective action under the FLSA have the burden to show that they are "similarly situated" to other employee class members. *See Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA (PJWX), 2015 WL 4698475, at *6 (C.D. Cal. Apr. 27, 2015); *see also Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).  When determining whether to conditionally certify the collective action, plaintiffs can show they are "'similarly situated' by making substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Litty*, 2015 WL 4698475, at *6; *see also Lewis*, 669 F.Supp.2d at 1127.  Courts apply a lenient

8

standard when determining whether to conditionally certify a collective. *See Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-AWI-MJS, 2014 WL 6685966, at *2 (E.D. Cal. Nov. 26, 2014).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Rather, district courts in this circuit routinely apply the Eleventh Circuit standard, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 WL 1746056, at *4 (E.D. Cal. Apr. 18, 2019); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F.Supp.3d at 1172 (internal quotation marks and citations omitted). A court will not approve a settlement when there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because doing so would shield employers from the full cost of complying with the statute. *Id.*

Plaintiffs previously filed a motion for conditional certification and facilitated notice under the FLSA, seeking to define those "similarly situated" for the FLSA collective action as follows:

> All current and former all hourly employees of Ensign United States Drilling (California) Inc., who, at any time within three years from the date of filing of this lawsuit, worked on oil platforms off of the California coast and who stayed on such platforms for periods of 24 hours or more (hereinafter the FLSA "Collective").

(Doc. No. 19 at 15.) The assigned magistrate judge issued findings and recommendations recommending that plaintiffs' motion for conditional certification be granted, but those findings and recommendations were objected to by defendant prior to settlement and the undersigned has neither adopted nor rejected them in light of the changed posture of the case. (Doc. No. 24; *see also* Doc. Nos. 28, 29.) It seems logical to assume that defendants no longer oppose conditional certification of the above FLSA collective, but because plaintiffs did not address, or even incorporate by reference, their motion for conditional certification in their motion for preliminary

9

1    approval of the settlement, the record does not provide any confirmation as to defendant's

2    position on certification of a FLSA collective.  Nor does it appear that the settlement agreement

3    directly addresses the matter.[2]

4          The proposed settlement agreement provides that $200,000 of the settlement amount will

5    be "allocated to claims under the [FLSA] to be awarded on a pro rata basis to Settlement Class

6    members who submit a valid and timely FLSA Claim Form by including that sum in the Net

7    Settlement Payment."  (Ex. 3, Hefelfinger Decl., Doc. No. 30-1 at 60.)  However, the settlement

8    agreement does not set out a separate definition for a FLSA collective or even provide the number

9    of class members who are entitled to receive a FLSA payment.  Furthermore, plaintiffs fail to

10   address whether there is a bona fide dispute over the FLSA claims or how the $200,000 FLSA

11   amount was calculated, including whether liquidated damages were included in that calculation.

12   *See* 29 U.S.C. § 216(b) (providing that an employer who violates minimum wage or overtime

13   provisions of the FLSA can be liable for an equal amount of liquidated damages in addition to the

14   unpaid compensation due).

15         Additionally, neither the motion for preliminary approval nor the settlement agreement

16   address whether the FLSA damages period was two or three years in this case.  (*Compare* Doc.

17   No. 19 at 15 (using three-year statute of limitations in proposed FLSA collective definition).)

18   The statute of limitations for FLSA claims is two years after the cause of action accrues, or three

19   years in cases involving willful violations.  *See* 29 U.S.C. § 255(a).  Thus, whether plaintiffs

20   utilized a two- or three-year limitations period in their calculations is again significant because

21   doing so could affect the overall valuation of plaintiffs' claims.

22         Finally, the court notes the following provision in the settlement agreement:

23   > Only Settlement Class members who submit timely and valid FLSA
> Claim Forms will receive their pro rata portion of the FLSA Payment
24   > allocated for settlement of the FLSA Claims.  If the Settlement Class
> members who submit a FLSA Claim Form do not collectively claim
25   > at least fifty percent (50%) of the total FLSA Payment, then those

---

[2] It is possible that the parties simply assumed that the undersigned would adopt the findings and recommendations over defendant's objections.  This has not and will not occur.  This is one of the busiest district courts in the United States.  The undersigned will not utilize incredibly scarce judicial resources to review and consider the merit of objections that may no longer be relevant.

> Settlement Class members shall have their shares of the FLSA Payment increased in relative proportion to the ratio used to initially calculate their respective Individual Settlement Payment of the FLSA Payment until at least 50% of the FLSA Payment is paid. In the event the Settlement Class members' claims exceed 50% of the FLSA Payment, then the actual amount claimed will be paid to each such Settlement Class member. The remainder, if any, of the FLSA Payment will be retained by Defendant.

(*Id.* at 77.) While a reversionary clause does not necessarily render a settlement agreement unfair or deficient, its inclusion "often raise[s] concerns about whether the settlement is in the best interests of the class." *Minor v. FedEx Office and Print Servs., Inc.*, No. C09-1375 TEH, 2013 WL 503268, at *4 (N.D. Cal. Feb. 8, 2013). Because plaintiffs have not provided any information as to how the $200,000 FLSA payment was valued or how much each settlement class member may receive from that amount, the court needs more information to determine whether the reversionary clause renders the settlement agreement inadequate.

Given that plaintiffs previously sought to conditionally certify a FLSA collective, which defendant opposed, plaintiffs are directed to file supplemental briefing addressing and clarifying whether they seek conditional certification of a FLSA collective action in addition to the Rule 23 settlement class, whether such certification is appropriate, whether a bona fide dispute over the FLSA claims exists, and how the $200,000 FLSA payment was calculated.[3]

**E.     Valuation of Claims**

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

---

[3] In the event that a FLSA collective action is certified, the parties may need to revise their notice to explain the nature of the hybrid Rule 23 and FLSA actions. *See Thompson v. Costco Wholesale Corp.*, No. 14-cv-27780 CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017).

11

expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As stated above, plaintiffs estimate that "if every class member submits a claim herein the per capita Individual Settlement Class Member Payment is $7,817.59 before deduction of taxes, administrative costs, litigation costs, attorneys' fees and the LWDA Payment." (Doc. No. 30 at 18 (emphasis in original).)  However, this estimated payment was simply calculated by dividing the number of settlement class members (307) from the total settlement amount ($2,400,000), and thus is not an accurate estimate for the following reasons.  First, the Individual Settlement Class Member Payment does not account for the various deductions from the total settlement amount, which means the individual payments will be much lower than estimated.  Second, while the court recognizes the individual amounts are based on the number of hours each class member worked during the claims period, plaintiffs have not provided any information about the size of the average or median award or even a range of awards possible under the settlement.  Third, as discussed above, plaintiffs have not provided any information as to how the $200,000 FLSA award was calculated or how much each settlement class member may receive from that award.  Finally, given the high attorneys' fees and enhancement awards requested, the court must evaluate whether such awards are reasonable in light of the individual payments owed to the settlement class members.

Furthermore, in order to "compare the terms of the compromise with the likely rewards of litigation," *Anderson*, 390 U.S. at 424–25, the court must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F.Supp.2d at 1080. Here, plaintiffs only provide that the "bargained-for settlement of $2,400,000 for the 307 Settlement Class members in this matter represents a reasonable portion of the potential damages (plus interest thereon) that the class may have recovered through continued litigation and taking into account extant legal rulings and remaining risk in the action." (Hefelfinger Decl., Doc. No. 30-1 ¶ 19.)  Plaintiffs, however, have not specified what that potential recovery would have been had they continued to pursue this litigation.

/////

Accordingly, plaintiffs are directed to file supplemental briefing providing an approximate size of the average or median award owed to each settlement class member or a range of possible awards under the settlement, including the $200,000 FLSA payment, as well as specifying how plaintiffs' claims were valued against that potential recovery.

**F.    Notice to California Labor and Workforce Development Agency**

The court must review and approve any settlement of PAGA claims, and the proposed settlement must be submitted to the LWDA at the same time that it is submitted to the court. Cal. Lab. Code § 2699(l)(2). Plaintiffs fail to demonstrate whether notice of the settlement was provided to the LWDA and thus, they must be and are directed to file supplemental briefing explaining whether this has been accomplished.

**G.    Notice Correction**

The court notes that the proposed notice states that the final fairness hearing shall be held before Chief Magistrate Judge Thurston in Bakersfield, California. (Ex. 3, Hefelfinger Decl., Doc. No. 30-1 at 89, 97.) However, the parties have not consented to the jurisdiction of the magistrate judge and therefore, it will be the district judge that would approve any settlement and conduct any final fairness hearing. Currently, there is no district judge assigned to this action, but a final fairness hearing will be held before District Judge Dale A. Drozd in Fresno, California.

**H.    Continuing Jurisdiction of Trial Court**

Finally, the settlement agreement states that post-judgment, the court "shall retain jurisdiction of this action solely for the purpose of interpreting, implementing, and enforcing this Settlement consistent with the terms set forth herein." (Ex. 3, Hefelfinger Decl., Doc. No. 30-1 at 63.) The court will decline to retain jurisdiction post-judgment without a specific showing that it is necessary in this action.

## CONCLUSION

For the reasons explained above, the parties shall file supplemental briefing and documentation addressing the following issues raised by the pending motion for preliminary approval within thirty (30) days from the date of this order:

1. The above-benchmark attorneys' fees;

2. The enhancement awards for class representative plaintiffs Newell and Calderon;

3. Whether the proposed Rule 23 settlement class definition satisfies the requirements of Rule 23(b)(3);

4. Whether the parties seek to conditionally certify a FLSA collective action in addition to the Rule 23 settlement class;

5. The average or median award owed to each individual class member, or a range of possible awards under the settlement;

6. The potential recovery compared to the terms of the settlement; and

7. Any other issues identified above.

IT IS SO ORDERED.

Dated:   **April 2, 2021**                    _____
                                                                   UNITED STATES DISTRICT JUDGE