Daniel J. Palay, SBN 159348
*djp@calemploymentcounsel.com*
Brian D. Hefelfinger, SBN 253054
*bdh@calemploymentcounsel.com*
**PALAY HEFELFINGER, APC**
1746 S. Victoria Ave., Ste 230, Ventura, CA 93003
Tel: (805) 628-8220; Fax: (805) 765-8600

Michael A. Strauss, SBN 246718
*mike@strausslawyers.com*
Andrew C. Ellison, SBN 283884
*andrew@strausslawyers.com*
**STRAUSS & STRAUSS, APC**
226 W. Ojai Ave., Ste 101-325, Ojai, CA 93023
Tel: (805) 641-6600; Fax: (805) 641-6607

*Counsel for Plaintiff Grant Fritsch and the Putative Class*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS NEWELL, an individual, for himself and those similarly situated; MIGUEL CALDERON, an individual, for himself and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENSIGN UNITED STATES DRILLING (CALIFORNIA) INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 1:19 CV-01314- JLT-BAK<br><br>*Assigned to:  Hon. Jennifer L. Thurston*<br><br>*[removed from Kern County Superior Court Case No. BCV-15-100367]*<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION; AND**<br><br>*UNOPPOSED* **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>FINAL APPROVAL HEARING</u>:<br>Date:        May 19, 2022<br>**TIME:        9:00 A.M.**<br>**PLACE:    COURTROOM 4 (VIA ZOOM)**<br>  *Action Removed:  September 20, 2019* |

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 19, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jennifer L. Thurston, at the Robert E. Coyle United States Courthouse located at 2500 Tulare Street, Fresno, CA 93721, Courtroom 4, 7th floor, via Zoom videoconferencing, Plaintiffs Louis Newell and Miguel Calderon ("Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order granting final approval of the parties' Joint Stipulation of Class Action Settlement and Release ("Settlement," Doc. No. 30-1 at 56-104). This motion is *unopposed* by Defendant Ensign United States Drilling (California) Inc.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Doc. No. 38). The motion will be based on this Notice, the operative complaint in this action, the Memorandum of Points and Authorities filed herewith, the Settlement, the declarations filed herewith in support of this motion, the Motion for Preliminary Approval and the Motion for Approval of Attorneys' Fees and Costs in Connection with Class and PAGA Settlement (Doc. No. 43), the Proposed Order filed with this motion, and on the other pleadings and memoranda in this matter and such further evidence and argument as may be presented at or before the hearing on this Motion.

This motion is made following the completion of the class notice process whereby the Claims Administrator mailed the Class Notice to all persons identified as members of the Settlement Class by First Class Mail on January 24, 2022.

Pursuant to the Court's Standing Order, Class Counsel certifies that meet and confer efforts have been exhausted in that this motion is unopposed and required to be filed pursuant to Rule 23.

Date: April 21, 2022                    STRAUSS & STRAUSS, APC
                                        By: */s/ Michael A. Strauss*
                                        Michael A. Strauss
                                        Attorneys for Plaintiffs and the Putative Class

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ............................................................................................ 1

3    II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

4         A.   Factual background. ............................................................................. 1

5         B.   Procedural history. .............................................................................. 1

6         C.   The operative Complaint. .................................................................... 2

7         D.   Settlement Agreement. ........................................................................ 3

8         E.   Updates since preliminary approval. ................................................... 4

9    III.  MOTION FOR FINAL APPROVAL ............................................................ 4

10        A.   Class Certification. .............................................................................. 4

11        B.   The Court should grant final approval of the Settlement under Rule 23. .................................. 5

12             1.   Legal standard. ........................................................................... 5

13             2.   The Churchill factors support approval of the Settlement. ........ 6

14             3.   The Rule 23(e) factors support approval of the Settlement. ..... 13

15        C.   The FLSA portion of the Settlement should be approved. ................ 17

16        D.   The PAGA portion of the Settlement should be approved. ............... 18

17        E.   Supplemental briefing regarding award of attorney's fees. .............. 20

18        F.   The requested incentive payments are reasonable and should be awarded. ............................ 21

19   IV.   CONCLUSION ............................................................................................ 25

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Evergreen Moneysource Mortg. Co.*,
    No. 2:17-CV-00466-KJM-DB, 2019 WL 6051117 (E.D. Cal. Nov. 15, 2019) ....................... 13

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ................................................................................................ 5

*Arias v. Superior Court*,
    46 Cal. 4th 969 (2014) .......................................................................................................... 18

*Augustus v. ABM Sec. Servs., Inc.*,
    2 Cal. 5th 257 (2016) .............................................................................................................. 8

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................... 9, 22

*Borelli v. Black Diamond Aggregates, Inc.*,
    No. 2:14-CV-02093-KJM-KJN, 2021 WL 5139610 (E.D. Cal. Nov. 4, 2021) ...................... 15

*Brinker Rest. Corp. v. Superior Ct.*,
    53 Cal. 4th 1004 (2012) .......................................................................................................... 7

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) .......................................................................................... 6, 16

*Bykov v. DC Transportation Servs., Inc.*,
    No. 2:18-CV-1691 DB, 2020 WL 1030650 (E.D. Cal. Mar. 3, 2020) .................................... 24

*Contreras v. Worldwide Flight Servs., Inc.*,
    No. CV 18-6036 PSG (SSX), 2020 WL 2083017 (C.D. Cal. Apr. 1, 2020) ............................ 20

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................ 19

*Criswell v. Boudreaux*,
    No. 1:20-CV-01048-DAD-SAB, 2021 WL 5811887 (E.D. Cal. Dec. 7, 2021) ..................... 6, 9

*Dearaujo v. Regis Corp.*,
    No. 2:14-CV-01408-KJM-DB, 2017 WL 3116626 (E.D. Cal. July 21, 2017) ........................ 24

*Flores v. ADT LLC*,

No. 1:16-CV-00029 AWI JLT, 2018 WL 6981043 (E.D. Cal. Mar. 19, 2018) ....................... 22

*Fuller v. Zep, Inc.*,

No. 4:18-cv-02672-JSW (N.D. Cal. Jan. 22, 2020).................................................... 24

*Glass v. UBS Fin. Servs., Inc.*,

No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)..................................... 10

*Greer v. Dick's Sporting Goods, Inc.*,

No. 15-1063, 2019 WL 4034478 (E.D. Cal. Aug. 27, 2019)..................................... 18

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998) ............................................................... 6, 18, 19

*Hopson v. Hanesbrands, Inc.*,

No. CV 08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ..................................... 20

*In re Bluetooth Headset Prod. Liab. Litig.*,

654 F.3d 935 (9th Cir. 2011) ............................................................................ 6

*In re M.L. Stern Overtime Litig.*,

No. CV 07-0118 BTM (JMAx), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009)........................ 20

*In re Online DVD-Rental Antitrust Litig.*,

779 F.3d 934 (9th Cir. 2015) ............................................................................ 22

*In re Syncor ERISA Litig.*,

516 F.3d 1095 (9th Cir. 2008) ........................................................................... 5

*In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014)......................................................... 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

895 F.3d 597 (9th Cir. 2018) ........................................................................ 20

*Jefferson v. MEC Dev., LLC*,

No. 17-1394, 2019 WL 5209149 (E.D. Cal. Oct. 16, 2019)................................... 18

*Kim v. Allison*,

8 F.4th 1170 (9th Cir. 2021) ....................................................................... 6, 13

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*Kullar v. Foot Locker Retail, Inc.*,

    168 Cal. App. 4th 116 (2008) ................................................................................ 9

*Lewis v. Wells Fargo Co.*,

    669 F. Supp. 2d 1124 (N.D. Cal. 2009) ................................................................. 5

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998) .............................................................................. 9

*Litty v. Merrill Lynch & Co.*,

    No. cv 14-0425 PA (PJWX), 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015) ............................ 5

*Mauia v. Petrochem Insulation, Inc.*,

    5 F.4th 1068 (9th Cir. 2021) ................................................................................ 2

*Mauia v. Petrochem Insulation, Inc.*,

    No. 18-CV-01815-TSH, 2020 WL 264669 (N.D. Cal. Jan. 16, 2020) ....................................... 2

*McClure v. Waveland Servs., Inc.*,

    No. 2:18-cv-01726-KJM-AC, 2021 WL 5204151 (E.D. Cal. Nov. 9, 2021) ...................... 18, 21

*Mendiola v. CPS Sec. Sols., Inc.*,

    60 Cal. 4th 833 (2015) ......................................................................................... 7

*Naranjo v. Spectrum Sec. Servs.*,

    455 P.3d 704 (Cal. 2020) ..................................................................................... 3

*Naranjo v. Spectrum Sec. Servs., Inc.*,

    40 Cal. App. 5th 444 (2019) ................................................................................ 3

*Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*,

    210 F.3d 384 (9th Cir. 2000) .............................................................................. 12

*Newton v. Parker Drilling Management Services, Ltd.*,

    881 F.3d 1078 (9th Cir. 2018) .............................................................................. 2

*Newton v. Parker Drilling Mgmt. Servs., Inc.*,

    No. 2:15-CV-02517-RGK-AGR, 2019 WL 7865197 (C.D. Cal. Nov. 7, 2019) .......................... 2

*O'Connor v. Uber Techs., Inc.*,

    No. 13-cv-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) ........................ 5, 18, 20

iv

*Ochinero v. Ladera Lending, Inc.*,

    No. SACV191136JVSADSX, 2021 WL 4460334 (C.D. Cal. July 19, 2021)................ 8, 16, 17

*Parker Drilling Management Services, Ltd. v. Newton*,

    139 S.Ct. 1881 (2019) ............................................................................................................ 2

*Pederson v. Airport Terminal Servs.*,

    2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) ....................................................................... 15

*Pena v. Taylor Farms Pac., Inc.*,

    No. 13-1282, 2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ............................................ 18, 22

*Ramirez v. Benito Valley Farms, LLC*,

    No. 16-4708, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ............................................. 18

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ............................................................................................. 13

*Ross v. U.S. Bank Nat'l Ass'n*,

    No. 3:07-2951 SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ..................................... 23

*Sakkab v. Luxottica Retail N. Am. Inc.*,

    803 F.3d 425 (9th Cir. 2015) ............................................................................................. 18

*Sanchez v. Martinez*,

    54 Cal. App. 5th 535 (2020) ................................................................................................ 7

*Selk v. Pioneers Mem'l Healthcare Dist.*,

    159 F.Supp.3d 1164 (S.D. Cal. 2016) ................................................................................ 18

*Seminiano v. Xyris Enter., Inc.*,

    602 Fed.Appx. 682 (9th Cir. 2015) .................................................................................... 17

*Smothers v. NorthStar Alarm Services, LLC*,

    No. 17-548, 2020 WL 1532058 (E.D. Cal. Mar. 31, 2020) ............................................... 17

*Smothers v. NorthStar Alarm Servs., LLC*,

    No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058 (E.D. Cal. Mar. 31, 2020) ...................... 21

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ............................................................................................. 21

*Van Vranken v. Atl. Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 21, 23

*Villegas v. J.P. Morgan Chase & Co.*,

    No. 09-00261 SBA (EMC), 2012 WL 5878390 ........................................ 10

*Wershba v. Apple Computer, Inc.*,

    91 Cal. App. 4th 224 (2001) ............................................................... 9

*Wilson v. Metals USA, Inc.*,

    No. 2:12-CV-00568-KJM-DB, 2021 WL 516585 (E.D. Cal. Feb. 11, 2021) ......................... 23

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

    No. 17-853, 2020 WL 1492672 (E.D. Cal. Mar. 27, 2020)...................................... 20

*Zakskorn v. Am. Honda Motor Co., Inc.*,

    2:11-CV-02610-KJM, 2015 WL 3622990 (E.D. Cal. June 9, 2015)........................... 21

**STATUTES**

Cal. Bus. & Profs. Code § 17200 ........................................................................ 2

Cal. Civ. Code § 1542 ............................................................................... 23

Cal. Lab. Code § 203 ............................................................................. 2, 3, 8

Cal. Lab. Code § 226 ............................................................................. 3, 7, 8

Cal. Lab. Code § 226.7 ............................................................................. 3, 8

Cal. Lab. Code § 2699 ............................................................................ 3, 12

29 U.S.C. § 207........................................................................................ 3

43 U.S.C. § 1333...................................................................................... 2

**RULES**

Fed. R. Civ. P. 23 .......................................................................... *passim*

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

4

5

6

7

8

9

The Court preliminarily approved the Joint Stipulation of Class Action Settlement and Release ("Settlement," Doc. No. 30-1 at 56-104) entered into by Plaintiffs Louis Newell and Miguel Calderon and Defendant Ensign United States Drilling (California) Inc. ("Ensign").  Subsequently, the Court-appointed settlement administrator distributed the approved class notice to the Settlement Class members in compliance with the Court's preliminary approval order.  None of the Settlement Class members filed an objection to the Settlement; there is a single opt-out request.  Given the widespread support of the Settlement, Plaintiffs now move the Court for final approval pursuant to Rule 23(e).

10

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

11

**A.  Factual background.**

12

13

14

Plaintiffs refer to and incorporate herein by reference the Factual Background section of the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order").   Doc. No. 38 at 2-3.

15

16

17

18

19

20

21

22

Additionally, Plaintiffs Newell and Calderon and the Settlement Class either worked on oil platforms on the Outer Continental Shelf ("OCS"), i.e., beyond three miles from the California coastline, or in state waters, i.e., within that three- mile area.  Working conditions on these oil platforms, regardless of their location, were virtually identical.  Declaration of Brian D. Hefelfinger in Support of Motion for Final Approval ("Hefelfinger Decl.") at ¶ 6.  Plaintiffs resided for the duration of their "hitch" on their assigned platform and Ensign provided them with all their meals.  Doc. 38 at 2-3.  Plaintiffs allege that, due to these working conditions, Ensign failed to comply with California and federal wage-and-hour laws. *See* Doc. No. 15.

23

**B.  Procedural history.**

24

25

26

27

28

This case has a long procedural history that involves lengthy state court proceedings, followed by a removal to this Court.  Rather than restate the entirety of the procedural history up to and through preliminary approval, Plaintiffs incorporate by reference the Court's recitation thereof in its Preliminary Approval Order.  Doc. No. 38 at 3-5.  Most relevant here is that Plaintiffs' original claims relied primarily on their argument that, by operation of the choice-of-law provision of the Outer Continental

Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a), California law extended to the oil platforms on the OCS. The Ninth Circuit validated this argument in *Newton v. Parker Drilling Management Services, Ltd.*, 881 F.3d 1078 (9th Cir. 2018), which held that California wage-and-hour laws, including those for minimum wages and overtime, applied as surrogate federal law on oil platforms on the OCS. The Supreme Court granted certiorari and reversed, holding that that, where federal law "addresses" the relevant legal issue, state law is *not* adopted as surrogate federal law on the OCS, so employers on the OCS do not need to comply with California's minimum wage and overtime laws. *Parker Drilling Management Services, Ltd. v. Newton*, 139 S.Ct. 1881 (2019) ("*Newton*").

In *Newton*, the Supreme Court did not address the issue of whether other California wage-and-hour laws, such as those for meal and rest periods and related penalties (including PAGA penalties), applied on the OCS. The parties in *Newton* and several other lawsuits with similar claims continued to litigate this issue. *See Newton v. Parker Drilling Mgmt. Servs., Inc.*, No. 2:15-CV-02517-RGK-AGR, 2019 WL 7865197, at *2-3 (C.D. Cal. Nov. 7, 2019); *Mauia v. Petrochem Insulation, Inc.*, No. 18-CV-01815-TSH, 2020 WL 264669, at *5 (N.D. Cal. Jan. 16, 2020). In July 2021, Ninth Circuit finally resolved the issue, holding that California meal and rest period laws (and related penalties) do not apply on the OCS. *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068 (9th Cir. 2021) ("*Mauia*").

**C. The operative Complaint.**

Between the Supreme Court's June 10, 2019, decision in *Newton* and the Ninth Circuit's July 20, 2021, decision in *Mauia*, there was uncertainty as to whether state wage-and-hour laws (exclusive of those for minimum wages and overtime, which *Newton* expressly barred) applied on oil platforms on the OCS. In this context, on January 29, 2020, Plaintiffs filed their Third Amended Complaint ("TAC"). The TAC differentiated between employees working in state waters and in federal waters on the OCS (by making each group a separate subclass). Doc. No. 15 at 3. The TAC sought minimum wages and overtime (under the California Labor Code and Business and Professions Code section 17200) for workers on platforms in state waters, whom they alleged were always on call and must be paid for all hours spent on their platforms, whether actively working or not. *Id.* at 5-8, 12-13. The TAC also stated a cause of action on behalf of workers in state waters for waiting-time penalties under Labor Code section 203, which was predicated on Ensign's alleged willful failure to pay minimum wages and

overtime wages at such workers' resignation or termination.[1]  *Id.* at 8-9.  The TAC sought meal and rest period premium wages for all workers, irrespective of the location of their oil platforms, under Labor Code section 226.7.  Doc. No. 15 at 9-11.  The basis of these claims was that class members must always be "on call" while offshore, and that they cannot leave the platforms or otherwise be guaranteed no interruptions or alarms, for meal or rest periods.  *Id.*  The TAC sought penalties on behalf of all subclasses for wage statement violations under Labor Code section 226.  *Id.* at 13-14.  The ninth cause of action in the TAC is for civil penalties available under the Private Attorneys General Act of 2004, California Labor Code section 2699 *et seq.* (the "PAGA").  The PAGA claim seeks civil penalties for violation of various sections of the Labor Code that are alleged to have occurred in state waters only.

The TAC also contains a claim for violations of the Fair Labor Standards Act ("FLSA").  Doc. No. 15 at 15-16.  The FLSA claim alleges that Ensign violated the FLSA's overtime provision, 29 U.S.C. § 207, by miscalculating the workers' overtime rate of pay.  The FLSA requires employers to compensate for overtime hours at 1.5 times an employee's regular rate of pay.  *Id.* at § 207(a).  The regular rate must include "all remuneration for employment paid to, or on behalf of, the employee."  *Id.* at § 207(e).  Federal regulations require that, if an employer furnishes an employee with lodging or meals in addition to cash wages, the value of such lodging and meals must be included in the employee's regular rate for the purpose of calculating overtime wages.  29 C.F.R. § 778.116.  The TAC alleged that Ensign furnished lodging and meals to all members of the class, regardless of whether they worked on the OCS or in state waters, and yet failed to include the value of the lodging or meals in the employees' regular rate of pay when calculating their overtime.  Doc. No. 15 at 15-16.

**D.  Settlement Agreement.**

In early December 2020, the Parties, after three mediations, finally reached an agreement to

---

[1] Labor Code section 203 calls for a penalty of up to 30 days at the employee's regular rate of compensation in the event that an employer willfully fails to pay all wages owed at the employee's resignation or termination.  Lab. Code § 203(a).  At the time of the filing of the TAC, a California Court of Appeal had held that waiting-time penalties are not available when the wages unpaid at the time of resignation or termination are meal or rest period premium wages under Labor Code section 226.7.  *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 474 (2019).  The California Supreme Court granted review, *Naranjo v. Spectrum Sec. Servs.*, 455 P.3d 704 (Cal. 2020), but has yet to issue a decision.  Thus, under current California law, only the state-waters subclass could state a claim for section 203 penalties.

settle this action. Hefelfinger Decl. at ¶¶ 7-10. The terms of the settlement are set forth in the Stipulation of Settlement, Exhibit 3 to the Hefelfinger Declaration filed in support of the Motion for Preliminary Approval, Doc. No. 30-1 at 56-104, and incorporated herein by this reference. The Court also neatly summarized its terms in the Preliminary Approval Order. Doc. 38 at 6.

**E. Updates since preliminary approval.**

On December 20, 2021, the Court granted Plaintiff's motion for preliminary approval. Doc. No. 38. On January 24, 2022, pursuant to the Court's Preliminary Approval Order, the Claims Administrator, CPT Group, Inc., sent the approved Class Notice to all Settlement Class members. Declaration of Jeremy Talavera on Behalf of CPT Group, Inc., Settlement Administrator, with Respect to Settlement Notice Administration ("CPT Decl.") at ¶ 7. Out of 298 notices mailed, only six were ultimately returned as undeliverable with no forwarding address. *Id.* at ¶ 9. The total deliverability of class notices to Settlement Class members is 99.66 percent. *Id.* at ¶ 15. The participation rate for FLSA members is 37.58 percent. *Id.* at ¶ 16.

On March 10, 2022, in advance of the March 25, 2022, opt out/objection deadline, Plaintiffs moved the Court for an award of attorneys' fees and costs. Doc. No. 43. The hearing on the motion for fees is to be held on the same day as that for the instant motion for final approval of the Settlement.

The deadline to return an FLSA Claim Form or opt out of or object to the Settlement was March 25, 2022 (60 days from the Notice Date). So far, no one has filed an objection to the Settlement. CPT Decl. at ¶ 12. Only one person has opted out of the Settlement. *Id.* at ¶ 14.

**III.    MOTION FOR FINAL APPROVAL**

**A. Class Certification.**

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of the Settlement Class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). Rule 23(a) provides that a class action can be maintained if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). As relevant here, settlement certification of a Rule 23(b)(3) class requires that (1) "the questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members" and (2) "a class action [be] superior to any other available methods

for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Additionally, plaintiffs seeking conditional certification of an FLSA collective action must show that they are "similarly situated" to other employee class members. *Litty v. Merrill Lynch & Co.*, No. cv 14-0425 PA (PJWX), 2015 WL 4698475, at \*6 (C.D. Cal. Apr. 27, 2015); see also *Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009).

The Court analyzed these factors in its Preliminary Approval Order and there is no reason to disturb its earlier conclusions. *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 4394401, at \*4 (N.D. Cal. Sept. 13, 2019). The requirements of Rule 23(a) and (b)(3) were satisfied then. *See* Doc. 38, at 12-17. So too were the requirements for conditional certification under the FLSA. *Id.* at 18. There have been no changes to the class impacting the numerosity, commonality, typicality, and adequacy of representation factors. Hefelfinger Decl. at ¶¶ 28. Nor have any questions of law or fact common to the Settlement Class been subsumed by questions affecting only individual Settlement Class members. *Id.* Plaintiffs and the putative FLSA collective also remain similarly situated because there has been no change to their position that they were not paid overtime wages that included the value of lodging and meals as required under the FLSA's overtime requirements. *Id.* Most importantly, the notice procedure authorized by the Court has resulted in an overwhelmingly positive reaction by the Settlement Class members, since none opted out or objected to the Settlement. *Id.*, at ¶¶ 30-31. There is no reason for the Court, therefore, to depart from its previous conclusion that the Settlement Class meets the certification requirements of Rule 23 and for conditional certification under the FLSA. Plaintiffs urge the Court to confirm its previous certification of the Settlement Class.

**B. The Court should grant final approval of the Settlement under Rule 23.**

**1. Legal standard.**

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). Where, as here, the proposed settlement will bind the Settlement Class members (by, e.g., releasing their claims), the Court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This standard balances the public policy favoring settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), with the due process interests of absent Settlement Class members, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1026 (9th Cir. 1998)).

"In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors,'" viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

However, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 1179 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); see also *Briseño v. Henderson*, 998 F.3d 1014, 1025-26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires courts "to go beyond our precedent" by applying the heightened scrutiny set forth in *Bluetooth* to all class action settlements). Rule 23(e)(2) also requires the court to consider "the terms of any proposed award of attorney's fees" and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair. *Briseño*, 998 F.3d at 1024-25. A Court must therefore "scrutinize fee arrangements" to determine if class members have been "shortchanged" as a result of "collusion." *Id.* at 1026. Three "red flags" might reveal collusion: "(1) a handsome fee award despite little to no monetary distribution for the class, (2) a 'clear sailing' provision under which defendant agrees not to object to the attorneys' fees sought, and (3) an agreement that fees not awarded will revert to the defendant, not the class fund." *Kim*, 8 F.4th at 1180.

### 2.  The *Churchill* factors support approval of the Settlement.

#### a.  The strength of the plaintiffs' case.

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *Criswell v. Boudreaux*, No. 1:20-CV-01048-DAD-SAB, 2021 WL 5811887, at *5 (E.D. Cal. Dec. 7, 2021) (citation omitted). The court cannot reach such a conclusion because evidence has not been fully presented. *Id.* Thus, it "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

The strength (or weakness) of Plaintiffs' claims depends largely on the location of the work performed. *Newton* and *Mauia* gutted the state law claims of all Class members who worked for Ensign in federal waters. These individuals make up the vast majority of the class. Hefelfinger Decl. at ¶ 22; *see also,* Joint Brief re: *Newton and Mauia,* Doc. No 36. Indeed, if measured on a per-hitch basis (i.e., how many seven-day hitches employees worked on an assigned platform), about 80% percent of all hitches at issue in this case were worked in federal waters, with the remaining 20% percent worked in state waters. Hefelfinger Decl. at ¶ 20.

The claims of the workers that relate to their hitches occurring in state waters were relatively strong, compared to the federal-waters hitches. Their state law claims are predicated on the allegation that they were required to remain on the work premises, and were therefore on-call, during the entirety of each hitch. Hefelfinger Decl. at ¶ 21. Generally, when an employee must remain on the work premises, all the time spent thereon, including sleeping time, is compensable. *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 848 (2015). Likewise, any "on call" time must be compensated. *Id.* at 840-841. Thus, for the state-waters employees who remained on the work premises for their entire hitch, California law would likely require them to be paid around the clock. Given that the Class was only paid for certain hours while on the platforms, there would be many wholly uncompensated hours that must be paid at either the minimum wage or overtime/doubletime rates.[2]

The state-waters subclass also has other wage-and-hour claims that are predicated on the on-call nature of their work. Hefelfinger Decl. at ¶ 22. If minimum or overtime wages are not included in an employee's wage statement, the employee may seek a penalty of up to $4,000 under Labor Code section 226(e), so Ensign's failure to pay for all hours worked could lead to liability for such penalty. Similarly, the employees who do not receive minimum or overtime wages owed at the time of their resignation or termination, they may seek the waiting-time penalty of up to 30 days of wages under Labor Code section 203. Employees must also be relieved of all duty during their meal periods. 8 Cal. Code Regs. § 11160(10)(D); *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1035 (2012). If an employee is

---

[2] Although the TAC seeks both minimum wages and overtime/doubletime wages, these are in reality alternative claims, since they seek different relief for the same injury, i.e., the failure to pay compensation for some hours of work. *See Sanchez v. Martinez*, 54 Cal. App. 5th 535, 547 (2020) (employees cannot be compensated twice for the same injury).

not relieved of all duty during a meal period, the employer must pay a meal period premium equal to one hour of pay. Lab. Code § 226.7(c). Likewise, if an employee remains on call during a rest period, the employer must pay rest period premiums under section 226.7. *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 269 (2016).

There are potentially legitimate defenses to these claims. For example, Ensign would argue that the employees were never required to remain at the worksite during their entire hitch. Hefelfinger Decl. at ¶ 23. Ensign could show that some employees chose to travel back to land at the conclusion of each day's work and others remained on the work premises only out of convenience, not some employer mandate to remain. *Id.* If Ensign convinced the trier of fact that the workers were indeed free to leave the work premises, Ensign could avoid liability for all minimum and overtime wages owed to the workers in state waters. All of the Plaintiffs' derivative claims, such as those for penalties under section 203 and 226, would also fail.

The workers in federal waters on the OCS have a weaker case under California law. At the time of the Settlement, there was no appellate authority restricting the application of California meal and rest period laws (and laws for related penalties) on the OCS, though *Newton* foreclosed the application of California minimum wage and overtime laws. In that specific context, the strengths of the OCS workers' claims were identical to those of the workers on platforms in state waters; Ensigns defenses would likely be the same too. It was only after *Mauia*, which post-dates the Settlement, that Plaintiffs would have been barred from bringing their remaining state law claims relative to work performed on the OCS.

Whether workers performed their duties on the OCS or in state waters, all have the same potential claim under the FLSA. Ensign furnished meals and lodging to the workers, but did not include the value of the said lodging or meals in their regular rates of pay. Hefelfinger Decl. at ¶ 26.

### b.  The risk, expense, complexity, and likely duration of further litigation.

"A[ ] central concern [when evaluating a proposed class action settlement] ... relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. In evaluating this factor, the Court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case[.]" *Ochinero v. Ladera Lending, Inc.*, No. SACV191136JVSADSX, 2021 WL 4460334, at *5 (C.D. Cal. July 19, 2021) (quoting *Kullar v. Foot*

8

*Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130 (2008)). "In the context of a settlement ... the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Ochinero*, 2021 WL4460334, at *5 (quoting *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001)).

Here, the Court has already assessed the strength of Plaintiffs' case and future risk. As the Court has noted, Plaintiffs were able to obtain a certain and significant benefit for the class despite the fact that *Newton* and *Mauia* would have vitiated significant portions of their claims and possibly could have led to a zero-dollar recovery. Doc. No. 38 at 24. In light of this risk, the average recovery for each Class Member is approximately $4,030 for the class portion of the Settlement and $1,135.34 for the FLSA portion. *See* CPT Decl. at ¶¶ 15-16. The Court previously concluded that the Settlement is fair, reasonable, and adequate under these circumstances. Doc. No. 38 at 24-25. Plaintiffs urge the Court to reach this same conclusion again for the same reasons.

### c. The risk of maintaining class action status throughout the trial.

The Court previously granted preliminary class certification in connection with Plaintiffs' motion for preliminary approval of the Settlement. Doc. No. 38 at 12-17. The Class has been given notice of the certification, and yet no Class member filed an objection. There has been only one opt-out. Thus, the Class's reaction suggests that class action status will be maintained throughout the trial. Finally, Class Counsel agrees that there would be little risk that Plaintiffs would be unable to maintain class action status throughout trial. Hefelfinger Decl. at ¶ 28. Accordingly, this factor weighs in favor of final approval. *Criswell*, 2021 WL 5811887, at *6.

### d. The amount offered in settlement.

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation and quotation marks omitted).

The amount offered in settlement here ($2,400,000) is within range of a reasonable settlement of this case.  Plaintiffs estimated that their maximum potential damages are about $5,800,000, exclusive of fees and costs.  Doc. 38 at 22.  The net settlement amount of $2,200,000 allocated to the California claims represents a 38-percent recovery of the maximum damages figure.  This settlement amount is similar to percentage recoveries California district courts have found to be reasonable.  Doc. No. 38 at 23 (citing *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15 percent of the maximum potential value found to be preliminarily fair*); Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of approximately 25 to 35 of the maximum potential value percent was found to be reasonable)).  This factor weighs in favor of final approval.

### e.  The extent of discovery completed and the stage of the proceedings.

As evidence of the adequacy of their representation, Class Counsel have engaged in extensive formal and informal discovery in this action.  From the outset of the litigation, the parties engaged in extensive disclosure and discovery, including both formal discovery exchanges, disclosures, and also informal sharing of documents and data incident to the multiple private mediation sessions conducted over the course of the litigation.  Hefelfinger Decl. at ¶ 7.  From approximately July of 2015 through the conclusion of the mediation held on September 18, 2020 (i.e., until the settlement), the parties engaged in extensive negotiations with respect to the various legal facets of the case, as well as settlement.  *Id*. at ¶ 8.  The parties also worked cooperatively regarding various stipulations pertaining to addressing the key legal issues driving the action.

Plaintiffs' counsel have conducted an investigation and extensive discovery during the pendency of the action.  The investigation has included, among other things: (a) inspection and analysis of the documents produced by Defendant, which included information pertaining to the putative class members' work schedules, workplace  policies, meal period practices, and pay practices; (b) detailed class member data relating to platform assignments, rates of pay, and data concerning all shifts/hours worked; (c) interviews of numerous members of the putative class; (d) analysis of potential class-wide damages; (e) analysis of the legal positions taken by Defendant and Plaintiffs; (f) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (g)

1  formal written discovery and disclosure, as well as deposition discovery of the person-most-

2  knowledgeable witnesses as well as the Plaintiff; and (h) informal discovery incident to the private

3  mediations.  Hefelfinger Decl. ISO Prelim. Appr., Doc. No. 30-1, at ¶ 12.

4       In conducting the disclosure and discovery outlined above, the Parties have engaged in sufficient

5  investigation to assess the relative merits of the claims of Plaintiffs and the other members of the

6  proposed Settlement Class, and of Defendant's affirmative defenses, defenses to certification, and other

7  legal defenses to the action.  *Id.* at ¶ 13.  This factor, therefore, weighs in favor of final approval.

8                    **f.   The experience and views of counsel.**

9       Class Counsel herein are well qualified and, as detailed in the supporting declarations filed with

10  this motion, have substantial experience litigating and settling complex employment law actions

11  involving the same issues raised by this case, including prior class action experience with these same

12  legal issues.  *See* Hefelfinger Decl. I.S.O. Motion for Fees and Costs, Doc. No. 43-1; Declaration of

13  Michael A. Strauss in Support of Motion for Final Approval ("Strauss Decl.") at ¶¶ 6-11, 16-25.

14       Class Counsel believe that the claims, allegations and contentions asserted in the Action have

15  merit.  Hefelfinger Decl. at ¶ 19.  However, they recognize and acknowledge the expense and delay of

16  the lengthy proceedings necessary to prosecute the Action against Defendant through trial and appeals.

17  *Id.*  Class Counsel also recognize that *Newton* and *Mauia* fundamentally moved the needle in

18  Defendant's liability exposure in the case, and also that appeals concerning the remaining, less-valuable

19  claims, would nonetheless be a virtual certainty in the action.  *Id.*

20       Class Counsel are also mindful of the inherent problems of proof under, and possible defenses

21  to, the claims alleged in the Action.  *Id.* at ¶ 20*; see, e.g.,* arguments advanced in Defendant's Opp. to

22  FLSA Certification [Doc. No. 21 *et. seq.*], Def. 10-12-18 Opp. to Class Cert. [state court].  In light of

23  the preceding potential risks, Class Counsel believe that the terms set forth in the Settlement confer

24  substantial benefits upon Plaintiffs and each of the other members of the Settlement Class, and that an

25  independent review of the Settlement Agreement by the Court in the approval process will confirm this

26  conclusion.  Hefelfinger Decl. at ¶ 39.  Based on their own independent investigation and evaluation,

27  Class Counsel have determined that the terms set forth in the Settlement Agreement are in the best

28  interests of Plaintiffs and the other members of the Settlement Class.  *Id.* at ¶ 39; Strauss Decl. at ¶ 15.

1  This factor weighs in favor of final approval.

2  **g.  The presence of a governmental participant.**

3  Technically, there is no governmental participant in this action, since no state or federal agency

4  is a party.  However, the Settlement does provide relief under PAGA.  PAGA requires the parties to

5  submit a proposed settlement of a PAGA action to the California Labor and Workforce Development

6  Agency ("LWDA") at the same time as they seek approval of the settlement by the court.  Lab. Code §

7  2699(l)(2).   Here, Class Counsel submitted the Settlement to the LWDA on December 14, 2020.

8  Hefelfinger Decl. at ¶ 17.  The LWDA never filed an objection to the Settlement, nor has the LWDA

9  participated in any way in this action.  This factor, therefore, favors approval of the Settlement.

10  **h.  The reaction of the class members of the proposed settlement**

11  The response of the Class favors approval of the Settlement in every respect.  The Class had until

12  March 25, 2022 to object to the Settlement.  CPT Decl. at ¶ 10.  Plaintiffs filed the motion for attorneys'

13  fees and costs on March 10, 2022.  Doc. No. 43.  The motion will be heard at the same time as the instant

14  motion for final approval.  As of the date of the filing of this motion, zero objections to the final

15  settlement have been filed with the Court, and there has been only one opt-out out of 298 class members.

16  A low opt-out rate such as this (0.3%) suggests the support of class members and counsels in favor of

17  approval. *See Nat'l Coal. of Ass'ns of 7-Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir.

18  2000) (finding that a .6% opt-out rate suggests "that the settlement was a favorable one").  Here, where

19  only one person opted out and no one objected, the reaction of the Settlement Class members even more

20  strongly favors approval of the Settlement.

21  **i.  The terms of any proposed award of attorney's fees.**

22  Plaintiffs have separately filed their motion for attorney's fees, which the Court may use to

23  evaluate this *Churchill* factor.  Plaintiffs do point out, nevertheless, that the fees allowed by the

24  Settlement are *up to* 35 percent of the maximum settlement amount.  Settlement at ¶ XII.  Any amount

25  not awarded will revert to the Class for distribution on a pro rata basis.  *Id.*  Finally, no member of the

26  Class has objected to the proposed award of fees.

27  Going beyond the *Churchill* factors to review the proposed attorney's fees for signs of collusion,

28  as required by Ninth Circuit precedent, does not alter the conclusion that the proposed award of

attorney's fees is fair and reasonable.  First, there is no "handsome fee award despite little to no monetary distribution for the class."  *Kim*, 8 F.4th at 1180.  Rather, the average class member will receive thousands of dollars, which is a solid recovery in view of the many risks faced by Plaintiffs.

Second, while there is a "clear sailing" provision under which defendant agrees not to object to the attorney's fees sought, the Settlement makes it clear that the award of fees is up to the discretion of the Court.  If the Court awards less than the amount sought by Class Counsel, the remainder will revert back to the Class.  Moreover, Class Counsel have supplied the Court with their billing records to enable the Court to judge for itself whether the award of fees is reasonable under the circumstances.  This is not, therefore, a situation where Class Counsel will automatically get every penny they seek; instead, the Court gets to scrutinize the fee request and even reduce the requested fees as it sees fit.  Additionally, the fees sought by Class Counsel will be a percentage of the common fund, which mitigates the concern regarding collusion.  *Acosta v. Evergreen Moneysource Mortg. Co.*, No. 2:17-CV-00466-KJM-DB, 2019 WL 6051117, at *13 (E.D. Cal. Nov. 15, 2019) ("Although defendant agreed not to oppose class counsel's request for attorneys' fees, those fees will come from the settlement fund, mitigating the concern regarding defendant's agreement."); *cf. Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (collusion generally inferred from a "clear-sailing" provision where attorneys' fees are paid on top of the settlement fund).  There is no collusion in this scenario.

Finally, the third indicium of collusion – the reversion of fees to defendant, not the class fund, *Kim*, 8 F.4th at 1180 – is not present here.  Any reversion of fees will be to the Class, not to defendant.  For these reasons, the Settlement's proposed award of fees survives the rigorous scrutiny required by the Ninth Circuit.

### 3.  The Rule 23(e) factors support approval of the Settlement.

In addition to the *Churchill* factors, each of the Rule 23(e) factors also support approval of the Settlement.

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any

13

1
2
3

> proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

4

Fed. R. Civ. P. 23(e)(2). To the extent these factors are not discussed above relative to the *Churchill*

5

factors, Plaintiffs now present them to the Court for its confirmation that the Settlement should be

6

approved.

7

### a. The Class has been adequately represented.

8

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and

9

class counsel have adequately represented the class. This analysis includes "the nature and amount of

10

discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

11

In addition to the substantial discovery undertaken in the action, as discussed above, Class

12

Counsel have adequately represented the Class. As a preliminary matter, Class Counsel are no strangers

13

to class action litigation. Class Counsel have been lead or co-lead counsel in dozens of class action

14

cases in California and throughout the United States, and was counsel of record in many appellate cases.

15

Strauss Decl. at ¶¶ 6-11, 18; Hefelfinger Decl. at ¶ 4, 13. Thus, Class Counsel are well-suited to ensure

16

their representation of the Class is more than adequate.

17

The Class Representatives have also adequately represented the Class. Plaintiffs attended

18

multiple mediation sessions, gave deposition testimony, assisted with discovery requests and responses,

19

provided insight to Class Counsel, and never had any interests that were antagonistic to or in conflict

20

with the other Settlement Class members. Declaration of Louis Newell in Support of Motion for Final

21

Approval ("Newell Decl.") at ¶¶ 9-22; Declaration of Miguel Calderon in Support of Motion for Final

22

Approval ("Calderon Decl.") at ¶¶ 9-22.

23

For these reasons, the Class Representatives and Class Counsel have adequately represented the

24

Class, as required by Rule 23(e)(2)(A).

25

### b. The proposed Settlement was negotiated at arm's length.

26

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was

27

negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be

28

"described as [a] 'procedural' concern[ ], looking to the conduct of the litigation and of the negotiations

leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; *accord Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected non-collusive negotiations).

The Settlement is the result of the Parties' participation in three mediations. Hefelfinger Decl. at ¶ 7. Participating in a mediation with a skilled mediator is a hallmark of arm's-length negotiations. *Borelli v. Black Diamond Aggregates, Inc.*, No. 2:14-CV-02093-KJM-KJN, 2021 WL 5139610, at *5 (E.D. Cal. Nov. 4, 2021). At all times, opposing counsel tenaciously represented their clients' interests. For their part, Class Counsel also vigorously represented the best interests of the Class. In sum, Class Counsel were able to achieve an arm's-length resolution in the face of considerable risks, which will result in a substantial recovery for Plaintiffs and the Class. Hence, the Settlement was negotiated at arm's length and was non-collusive.

### c. The relief provided for the Class is adequate.

The third Rule 23(e) factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to Settlement Class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

### i. Costs, risks, and delay of trial and appeal.

Plaintiffs discussed this factor in addressing the *Churchill* factors above.

### ii. Effectiveness of proposed method of relief distribution.

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it

15

facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claim's processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*.

Here, with respect to the non-FLSA portion of the Settlement, the claims process is not unduly demanding in that it does not require that the members take any action to be paid. Settlement at § X. "Direct payment of a monetary award is an effective means of compensation for the class's injuries, which all are related to wages." *Borelli*, 2021 WL 5139610, at *5; *see* Fed. R. Civ. P. 23(e)(2)(C)(ii). Claims will be based on information that Ensign provides to CPT, including the identity of the eligible members, and the number of eligible work hours each member worked during the Class Period, and the PAGA Period.  Settlement at § X.

Because the proposed method of distributing relief to the Class is based on each member's personal records (including social security number) and requires no action from participating Settlement Class members, the method effectively distributes relief to members of the Settlement Class.  *See Ochinero*, 2021 WL4460334, at *6.

The Settlement offers class members monetary compensation sooner than they would receive it if the case were litigated through the completion of the judicial action and any appeals. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). No other action concerns the same or similar claims, and all those whom the Settlement binds are likely to be included in the distribution.  Hefelfinger Decl. at ¶ 5.  The parties used employment records to locate class members and determine the amount of their individual compensation.  CPT Decl. at ¶ 5.  In other words, this Class does not present the dangers of claims-made distributions, which the Ninth Circuit recently summarized. *See Briseño*, 998 F.3d at 1020.

### iii.  Terms of proposed award of attorneys' fees.

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c).  Other than the timing of the payment of fees, this factor is discussed hereinabove.  As for timing, Ensign shall fund $1,470,000 of the Settlement within 10 days after the Effective Date (i.e., after the Court's order granting final approval is no longer subject to challenge by appeal), after which time the Claims Administrator has fifteen days to pay settlement payments to the Settlement Class.  Settlement at §§ XI.B-C.  Ensign shall fund the remaining $930,000

16

no later than three months after funding the initial $1,470,000, after which the Claims Administrator has fifteen days to pay the Court-approved attorney's fees and costs to Class Counsel and the Court-approved PAGA Payment to the LWDA. *Id.*

#### iv.  Agreement identification requirement.

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, there is no further agreement made in connection with the Settlement.  Hefelfinger Decl. at ¶ 10. Thus, this condition is satisfied.

### d.  Settlement Class members are treated equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats Settlement Class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among Settlement Class members takes appropriate account of differences among their claims, and whether the scope of the release may affect Settlement Class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Here, each member of the Settlement Class will receive relief proportional to the number of hours that he or she worked for Ensign during the Class Period, as compared with the overall number of eligible hours worked by all members of the Settlement Class.  Settlement at § X [Doc. No. 30-1 at 19]. Given that this distribution formula is objective, the Settlement will therefore treat members of the Settlement Class equitably.  *See Ochinero*, 2021 WL4460334, at *7.

Based on the foregoing, Plaintiffs urge the Court to find that each of the Rule 23(e) factors has been met, which in turn favors approval of the Settlement.

### C.  The FLSA portion of the Settlement should be approved.

"FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Seminiano v. Xyris Enter., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015) (citation omitted). In the absence of controlling law, this court continues to apply the Eleventh Circuit's standard in evaluating FLSA settlements, as it has done before. *Smothers v. NorthStar Alarm Services, LLC*, No. 17-548, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (citations omitted). The relevant question is whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Jefferson*

1  *v. MEC Dev., LLC*, No. 17-1394, 2019 WL 5209149, at *3 (E.D. Cal. Oct. 16, 2019) (citation omitted).

2  "Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for

3  assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while

4  recognizing that some of those factors do not apply because of the inherent differences between class

5  actions and FLSA actions." *McClure v. Waveland Servs., Inc.*, No. 2:18-cv-01726-KJM-AC, 2021 WL

6  5204151, at *4 (E.D. Cal. Nov. 9, 2021) (citation omitted).  Here because the Rule 23 factors favor

7  approval of this Settlement, as discussed hereinabove, they too favor approval of the FLSA portion

8  thereof.  Moreover, as this Court previously found, there is a bona fide dispute over FLSA provisions.

9  Doc. No. 38 at 21; *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016)

10  ("A bona fide dispute exists when there are legitimate questions about 'the existence and extent of

11  Defendant's FLSA liability.'" (citation omitted)); *Greer v. Dick's Sporting Goods, Inc.*, No. 15-1063,

12  2019 WL 4034478, at *2 (E.D. Cal. Aug. 27, 2019).  For these reasons, Plaintiffs urge the Court to

13  approve the FLSA portion of the Settlement.

14  **D.  The PAGA portion of the Settlement should be approved.**

15  "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law

16  enforcement agencies,... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803

17  F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Any PAGA judgment binds not only members

18  of the class, but similarly situated workers who opt out of the class and the state's labor law enforcement

19  agencies. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014). A court analyzing the compromise of a

20  PAGA claim must consider whether the settlement is " 'fundamentally fair, reasonable, and adequate'

21  with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (citation

22  omitted). However, neither the PAGA nor the California state court has established any specific standard

23  for evaluating PAGA settlements. *See Ramirez v. Benito Valley Farms, LLC*, No. 16-4708, 2017 WL

24  3670794, at *3 (N.D. Cal. Aug. 25, 2017). The Court refers to the factors in *Hanlon v. Chrysler Corp.*,

25  150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate the PAGA settlement.  *See Pena v. Taylor Farms Pac.,*

26  *Inc.*, No. 13-1282, 2021 WL 916257, at *7-8 (E.D. Cal. Mar. 10, 2021); *McClure*, 2021 WL 5204151,

27  at *6.

28  The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the

strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.

Each of these factors was addressed hereinabove, though they nevertheless require some additional discussion in the context of PAGA. Here, the parties allocated $100,000 of the $2.4 million to PAGA penalties. Settlement at § I.T [Doc. No. 30-1 at 5]. Seventy-five percent of PAGA penalties recovered must be paid to the LWDA, Lab. Code § 2699(i), and the Settlement directs the parties to do so. Settlement at § I.T.

Plaintiffs valued their PAGA claim at $1.0 to $2.6M maximum exposure. Hefelfinger Decl. at ¶ 24. However, the Court has discretion to "award a lesser amount than the maximum civil penalty amount specified by [the PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Lab. Code § 2699(e)(2); *see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) ("if the case went to judgment and if the drivers prevailed, the Court would very likely reduce the award of PAGA penalties by a substantial amount."). Thus, even if Plaintiffs were to prevail on all of their claims for PAGA penalties, it is possible the Court would substantially reduce the penalties award. Plaintiffs factored in this risk of substantial reduction in their agreed-to PAGA allocation. *Id.*; *see also,* Doc. No. 38 at 23-24 (discussing adequacy of amount of PAGA allocation).

Plaintiffs reasonably chose to compromise their PAGA penalties in light of the risks of continued litigation. Plaintiffs' PAGA claims are derivative of their California Labor Code claims. TAC, Doc. No. 15 at 18-21. The merits of their Labor Code claims, therefore, are the same merits of their PAGA claims. The Court has already recognized the significant risks in pursuing these state law claims in light of *Newton* and *Mauia*. Doc. No. 38 at 24. This same logic applies with equal force to Plaintiffs' derivative PAGA claims, so a negotiated settlement of the PAGA claims that results in a monetary recovery for the PAGA members is preferable to protracted litigation that could result in a defense verdict. Thus, a PAGA allocation of $100,000 is reasonable.

Finally, the PAGA allocation is appropriate, as measured as a percentage of the gross settlement amount. Plaintiffs estimate that the maximum theoretical PAGA civil penalty amount would be in the range of $1.0 to $2.6 million. Hefelfinger Decl. at ¶ 24. While it is true that the PAGA portion of the settlement is a small fraction of the total potential liability, California courts routinely approve class action settlements with small PAGA allocations compared to the maximum possible PAGA recovery. *See Contreras v. Worldwide Flight Servs., Inc.*, No. CV 18-6036 PSG (SSX), 2020 WL 2083017, at *10 (C.D. Cal. Apr. 1, 2020). Rather than evaluate the PAGA allocation against the total potential PAGA penalties, courts tend to look instead at the PAGA allocation as a percentage of the gross settlement. *Id.* Using this approach, courts approve PAGA allocations in the range of between zero to two percent of the gross settlement amount. *Id.*; *see, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 17-853, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving PAGA penalty equal to approximately 2 percent of gross settlement). Here, the PAGA allocation ($100,000) represents approximately 4.2 percent of the Gross Settlement Amount. This agreed-upon PAGA allocation, because it is higher than the usual range of zero to two percent of the gross settlement, does not raise concerns that Plaintiff is skirting the "special responsibility to [his] fellow aggrieved workers" or using the PAGA claim "merely as a bargaining chip, wherein the rights of individuals ... may be waived for little additional consideration in order to induce the employer to agree to a settlement." *O'Connor*, 201 F. Supp. 3d at 1134. These factors favor approval of the the PAGA settlement.

**E. Supplemental briefing regarding award of attorney's fees.**

Plaintiffs filed their motion for attorney's fees well before the instant motion, and yet no one filed an objection thereto. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 615 (9th Cir. 2018) ("class members [must] have a chance to object to the fee motion when it is filed"). Here, by filing their fee motion on March 10, 2022, and setting it for hearing on May 19, 2022, Plaintiffs gave the class ten weeks to file an objection to the motion, which is "more than enough time" for class members to do so. *Id.* (finding that a six-week period was more than enough

1  time to file an objection to a fee motion). No one has filed an objection to the fee motion.

2      On the issue of the reasonableness of Plaintiffs' counsels' rates of pay in this district, Plaintiffs

3  additionally point the Court to *McClure*, 2021 WL 5204151. In *McClure*, a similar case with

4  overlapping attorneys, this Court found that the Strauss & Strauss firm's rates were reasonable in this

5  district. *Id.* at *5. Michael Strauss's approved hourly rate back in 2021 was $650. *Id.* Here, he seeks

6  his fees at the rate of $675 per hour, though this increased rate reflects the passage of time and his firm's

7  increase in attorney fee rates. Strauss Decl. at ¶ 26. Thus, for the same reasons stated in *McClure*,

8  Plaintiffs urge the Court to find that Class Counsel's requested rates are reasonable for this district.

9      Finally, Class Counsel have incurred more fees now that they have presented the instant motion

10 before the Court. Mr. Strauss has recorded 21.6 more hours, while Mr. Hefelfinger has recorded an

11 additional 15 hours. Strauss Decl. at ¶ 27; Hefelfinger Decl. at ¶ 27. These additional hours, at the

12 hourly rates requested in their fee motion, increase Class Counsel's unadorned lodestar to $426,527.50.

13 The multiplier to reach the requested $840,000 in fees is now 1.97. Strauss Decl. at ¶ 29.

14      **F. The requested incentive payments are reasonable and should be awarded.**

15      Named Plaintiffs Newell and Calderon seek incentive payments of $35,000 and $25,000,

16 respectively. Representative plaintiffs, as opposed to designated class members, are eligible for

17 reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Whether to

18 authorize an incentive payment to a class representative is a matter within the court's discretion.

19 *Smothers v. NorthStar Alarm Servs., LLC*, No. 2:17-CV-00548-KJM-KJN, 2020 WL 1532058, at *11

20 (E.D. Cal. Mar. 31, 2020). In determining whether to approve an enhancement payment, courts may

21 consider the following factors: (1) "the risk to the class representative in commencing suit, both financial

22 and otherwise;" (2) "the notoriety and personal difficulties encountered by the class representative;" (3)

23 "the amount of time and effort spent by the class representative"; (4) "the duration of the litigation;" and

24 (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

25 *Id.* (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). Various courts

26 in this circuit, including this court, have adopted the *Van Vranken* factors. *Id.*; *Zakskorn v. Am. Honda*

27 *Motor Co., Inc.*, 2:11-CV-02610-KJM, 2015 WL 3622990, at *17 (E.D. Cal. June 9, 2015). In

28 determining the amount of time and effort spent by the class representative, the court will examine

1    "'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts

2    taken as class representative to justify the discrepancy between [his] award and those of the unnamed

3    plaintiffs.' " *Flores v. ADT LLC*, No. 1:16-CV-00029 AWI JLT, 2018 WL 6981043, at *1 (E.D. Cal.

4    Mar. 19, 2018) (citation omitted). Courts will also consider the "proportion of the [representative]

5    payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*

6    *Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).

7        With respect to the first factor, Plaintiffs, by initiating this case, assumed the risk of a judgment

8    against them and personal liability for an award of costs to defendant in the event of an adverse outcome.

9    Newell Decl. at ¶ 25; Calderon Decl. at ¶ 25; Hefelfinger Decl. at ¶ 30. They also assumed reputational

10   risk.  Newell Decl. at ¶ 25; Calderon Decl. at ¶ 23.  "Incentive awards are particularly appropriate in

11   wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit

12   against their former employers. *Bellinghausen*, 306 F.R.D. at 267.  Due to the risks undertaken by the

13   two Plaintiffs, the first factor weighs in favor of granting an incentive award to each Plaintiff.

14       As for the second factor, Plaintiffs indeed encountered personal difficulties as a result of their

15   participation in this case.  Newell is afraid of disclosing the existence of this case to future employers,

16   and feels that his prospects for advancement in his career have been impacted by filing this action.

17   Newell Decl. at ¶ 23; see *Pena*, 2021 WL 916257, at *6  ("[B]y attaching their names to this litigation,

18   the named plaintiffs took on the risk that future employers would learn of their participation in this case

19   and would unfairly associate them with costly litigation.").  Indeed, after joining the action as a plaintiff,

20   Calderon's employment with Ensign was terminated.  Calderon Decl. at ¶ 23: Hefelfinger Decl. at ¶ 31.

21   He too feels that his prospects for advancement in his career are uncertain.  Calderon Decl. at ¶ 23.

22   Given that the oil and gas industry is very collegial, and word travels quickly, Calderon is worried about

23   suffering adverse effects on his employability in this industry.  *Id.*  Therefore, the second factor supports

24   incentive awards.

25       As for the third factor, Newell estimates he spent upwards of 275 hours actively participating in

26   this action.  Newell Decl. at ¶ 21.  Calderon estimates he spent 150 hours on this case.  Calderon Decl.

27   at ¶ 21.  Both spent time conversing with Class Counsel and other class members and helping direct the

28   discovery and litigation that were conducted in this case. Newell Decl. at ¶ 19; Calderon Decl. at ¶ 19;

Hefelfinger Decl. at ¶ .  They both reviewed and help to respond to discovery requests.  Newell Decl. at ¶¶ 19-20; Calderon Decl. at ¶¶ 19-20; Hefelfinger Decl. at ¶ 34.  Newell sat for a deposition.  Newell Decl. at ¶ 22.  Both plaintiffs attended the mediations and reviewed the final settlement agreement.  Newell Decl. at ¶ 17; Calderon Decl. at ¶ 22.  Because plaintiffs expended significant efforts and were personally involved in the litigation, this factor weighs in favor of granting each an incentive award.

With respect to the fourth factor, plaintiff Newell initiated the case on June 22, 2015, settled in December 2020, and requested preliminary approval on December 14, 2020. The court subsequently granted the motion for preliminary approval, roughly 5.5 years after the filing of the complaint. Thus, the fourth factor weighs in favor of granting incentive awards. *Cf. Van Vranken*, 901 F. Supp. at 296, 299 (where the class representative's "participation lasted through [roughly thirteen] years of litigation," a $50,000 incentive award was appropriate); *see also Ogbuehi*, 2015 WL 3622999, at *14 (finding fourth factor neutral where litigation settled after only roughly one year).

Finally, with respect to the fifth factor, the personal benefit enjoyed by a plaintiff, neither named Plaintiff appears to gain any other benefit beyond what he will gain as a class member. *See generally* Settlement, Doc. 30-1 at 56-104; *see also In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member.").  On the contrary, unlike normal Class members, both Plaintiffs are also entering into a general release with a Civil Code section 1542 waiver of unknown claims, which shows that Plaintiffs are giving up rights that other Class members are retaining.  This factor weighs in favor of granting an incentive award.

On balance, the relevant factors favor granting an incentive award. The requested incentive awards of $35,000 and $25,000 are reasonable and comparable to awards in other cases. See, e.g., *Wilson v. Metals USA, Inc.*, No. 2:12-CV-00568-KJM-DB, 2021 WL 516585, at *9-10 (E.D. Cal. Feb. 11, 2021) (awarding $25,000 and $15,000 to the two named plaintiffs in $2,800,000 gross settlement); *Ross v. U.S. Bank Nat'l Ass'n*, Civ. No. 3:07-2951 SI, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and risk that being a class representative would harm their

reputation); *Fuller v. Zep, Inc.*, No. 4:18-cv-02672-JSW (N.D. Cal. Jan. 22, 2020), where "the court awarded the class representative a $30,000 incentive award for recovering a $1.5M fund on behalf of approximately 289 workers.")

As a percentage of the potential gross settlement amount, the incentive award is comparable to what is commonly approved, and as compared to the average individual settlement amounts, the ratio of individual to incentive award also is in a similar range.

| Case | Settlement Amount | Total Incentive Awards (and Number) | Total Incentive Awards as % of Settlement | Average Payment to Class Members | Total Incentive Awards as Multiple of Average Payment to Class Members |
|------|------|------|------|------|------|
| *Acosta*, 2019 WL 6051117 | $350,000 | $10,000 (1) | 2.9% | $2,962.36 | 2.4X |
| *Bykov v. DC Transportation Servs., Inc.*, No. 2:18-CV-1691 DB, 2020 WL 1030650, at *8 (E.D. Cal. Mar. 3, 2020) | $475,000 | $10,000 (1) | 2.1% | $2,780.49 | 2.6X |
| *Dearaujo v. Regis Corp.*, No. 2:14-CV-01408-KJM-DB, 2017 WL 3116626, at *3 (E.D. Cal. July 21, 2017) | $1,950,000 | $30,000 (2) | 1.5% | $998.75 | 14X (each) |
| *Fuller v. Zep* | $1,500,000 | $35,000 (1) | 2.3% | $3,065.74 | 11.4X |
| *McClure*, 2021 WL 5204151 | $290,000 | $5,800 (1) | 2% | $1,176.14 | 3.9X |
| *Ross*, 2010 WL 3833922 | $1,050,000 | $100,000 (4) | 9.5% | Unknown | Unknown |
| *Wilson*, 2021 WL 516585 | $2,800,000 | $40,000 (4) | 1.4% | Unknown | Unknown |
| Average | $1,202,143 | $32,971.43 | 3.10% | $2,196.70 | 6.86X |
| **This case** | **$2,400,000** | **$50,000 (2)** | **2.1%** | **$5,160 (approx.)** | **5.8X (Newell); 3.8X (Calderon)** |

This chart shows that these recent incentive awards are approximately 3.1 percent of the value of the entire settlement and that on average the awards are 6.86 times the average class member's recovery. Here, the two awards sought by Plaintiffs are below these average figures.

All things considered, given the length of the case and the named plaintiffs' substantial involvement, the requested incentive awards are reasonable. Plaintiffs put in hundreds of hours of their time, assisted their counsel and fellow class members, actively participated in the litigation, and suffered reputational difficulties. Given the risks posed by *Newton* and *Mauia*, which would have substantially impacted the value of this case and possibly led to a defense verdict on all state law claims for shifts worked on the OCS, these two Plaintiffs accepted the risk of losing and being held responsible for the prevailing party's costs. Accordingly, Plaintiffs urge the Court to award them their full requested incentive awards.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for final approval of the instant settlement.

Date:  April 21, 2022        **STRAUSS & STRAUSS, APC**

By: */s/ Michael A. Strauss*
Michael A. Strauss
Attorneys for Plaintiffs and the Class

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**